IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| G&H DIVERSIFIED MANUFACTURING LP, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> *Defendant.* ) <br> ) | Court No. 22-00130 |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Date: June 21, 2024

Respectfully submitted,

/s/ Lewis E. Leibowitz
*The Law Office of Lewis E. Leibowitz*
5335 Wisconsin Ave., N.W., Suite 440
Washington, DC 20015
Telephone No.: (202) 617-2675
Email: lewis.leibowitz@lellawoffice.com

*Attorney for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 1

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

1.    Customs abused the protest process to decline to implement a lawfully obtained exclusion from Section 232 tariffs. ……………………………………...……………………. 4

2.    The denial of the protest was contrary to the proclamations and the BIS regulations. ……………………………………………………………………………. 7

3.    Unlike ordinary protest denials, this one frustrated the Section 232 scheme proclaimed by the President and administered by BIS. ……………………………………………. 8

4.    The protest procedure was the only means available to obtain a refund. ………….. 9

5.    Analysis. …………………………………………..…………………………………. 11

CONCLUSION ……………………………………………………………………………. 13

## **TABLE OF AUTHORITIES**

### CASES

*Butler v. Principi,*
  244 F.3d 1337, 1340 (Fed. Cir. 2001) ............................................................................. 8

*Forest Labs., Inc. v. United States,*
  476 F.3d 877, 881 (Fed. Cir. 2007) ................................................................................ 4

*GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.,*
  64 F.3d 1112, 1114 (7th Cir. 1995) ................................................................................ 4

*Herbert Abstract Co. v. Touchstone Properties, Ltd.,*
  914 F.2d 74, 76 (5th Cir. 1990) ...................................................................................... 3

*NZ Lamb Co. v. United States,*
  40 F.3d 377, 380 (Fed. Cir. 1994) .................................................................................. 4

*Universal Steel Prods. v. United States,*
  495 F. Supp. 3d 1336, 1342 (Ct. Int'l Trade 2021) ......................................................... 4

*United States v. Chemical Found., Inc.,*
  272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926) ....................................................... 8

### STATUTES

19 U.S.C. §1862 ................................................................................................................ *passim*

### REGULATIONS

83 Fed. Reg. at 46035 (September 11, 2018) ............................................................................ 6

83 Fed. Reg. at 46045 (September 11, 2018) ....................................................................... 7, 8

Amended interim final rule on exclusions, 83 Fed. Reg. 46026 (September 11, 2018) ........... 5

Amended interim final rule on exclusions, 84 Fed. Reg. 26751 (June 10, 2019) .................... 5

Interim final rule on exclusions, 83 Fed. Reg. 12106 (March 19, 2018) ................................. 5

### OTHER AUTHORITIES

Presidential Proclamation 9705, 83 Fed. Reg. 11625 (March 15, 2018) ................................. 5

Presidential Proclamation 9711, 83 Fed. Reg. 13361 (March 22, 2018) .............................. 5, 9

Presidential Proclamation 9777, 83 Fed. Reg. 45025 (September 4, 2018) ...................... 5, 9

Rule 12(b) of the Federal Rules of Civil Procedure ...................................................... 4

Rule 12(c) of the Rules of the U.S. Court of International Trade ................................ 1, 3

## INTRODUCTION

In accordance with Rule 12(c) of the Rules of the U.S. Court of International Trade ("CIT"), Plaintiff, G&H Diversified Manufacturing LP, respectfully submits this Motion for Judgment on the Pleadings to seek relief sought in Counts I, III and IV of Plaintiff's Complaint.

## STATEMENT OF FACTS

Plaintiff was the importer of record for a shipment of imported tubing for assembly into perforating guns entered on May 2, 2020. Plaintiff prepared an Exclusion request which was submitted to BIS, also on May 2, 2020. The Exclusion request was valid and timely in all respects. After seven months, the Exclusion was approved by BIS on December 4, 2020. (Exclusion 85773).

Because the Entry was made before the Exclusion was approved, Plaintiff was required to pay and did pay applicable Section 232 tariffs along with the Entry. The Entry was in the liquidation process before Plaintiff could submit new information related to the matching of the Exclusion to the Entry, requiring Plaintiff to file a protest to obtain a refund of the duties. The Protest was timely filed within 180 days after notice of liquidation.

The Exclusion's terms and specifications matched the Entry documents to which the Exclusion applied. Plaintiff submitted the Exclusion request on the same date as the Entry (May 2, 2020). The filing was therefore within the applicable time limit for obtaining a refund of duties on the Entry.

The HTSUS classification on the Entry matched the classification claimed on the Exclusion and the notice of liquidation. The producer and seller on the Exclusion matched the invoicing party on the Entry. All the material specifications on the Entry also matched the Exclusion.

The Protest showed that the Exclusion granted to Plaintiff met all relevant requirements for application to the Entry, as noted above. Plaintiff's Protest did not challenge the HTSUS classification.

CBP had already confirmed the correct HTSUS classification included on the Entry on at least three occasions:

a) the posting of the Exclusion Request on May 13, 2020;

b) the approval of the classification in connection with the Exclusion determination by BIS on December 4, 2020; and

c) the notice of liquidation posted by CBP on March 26, 2021.

CBP decided, on all three occasions, that the HTSUS classification declared in the Exclusion and in the Entry was correct.

CBP nevertheless denied Plaintiff's Protest on the basis that the HTSUS classification that should have been asserted on the Entry was 7304.59.8020, and therefore it did not match the classification in the Exclusion. This decision directly contradicted three previous Customs decisions regarding the HTSUS classification of the entry.

The Entry was liquidated on March 26, 2021, assessing Section 232 duties in the amount of $393,324.75. Of this amount, $240,533.11, plus interest, is the amount of Section 232 duties on the Entry covered by the Exclusion that is the subject of this action.

Plaintiff filed the Protest seeking refund of Section 232 duties on April 19, 2021, within 180 days after liquidation of the Entry. See 19 U.S.C. § 1514(c)(3). The Protest sought refund of duties paid based on the match between the approved Exclusion and the Entry, including the claimed HTSUS classification. The Protest did not challenge the HTSUS classification in the Entry because it had been settled by at least three CBP determinations, as noted above.

The approved Exclusion was placed on the CBP list of active exclusions until its expiration one year after the date of approval. The Exclusion matched the Entry with respect to all material specifications, including, *inter alia*, the identity of the exclusion requester, the producer, the port of entry and the HTSUS classification (7304.29.6115). The Entry was thus covered by the Exclusion by its terms.

CBP is responsible for reviewing the accuracy, including the HTSUS classification, of all exclusion requests under the regulations applicable to steel exclusions. See 15 CFR Part 705, Supplement 1. On information and belief, therefore, CBP did review and determine the appropriate HTSUS classification with respect to the Exclusion before the entry was liquidated.

CBP's Notice of Liquidation of the Entry (March 26, 2021), which reflected CBP's decision regarding the Entry, reflected "no change" in the material terms of the Entry. The appropriate HTSUS classification is a material term of the Entry. The Protest was Plaintiff's only avenue for obtaining a refund of Section 232 duties. The Protest did not contest or challenge the HTSUS classification in the Protest or otherwise. CBP, BIS and Plaintiff accepted the claimed HTSUS classification as final for the Entry on three separate occasions, and Plaintiff had every reason to rely on those repeated confirmations.

## STANDARD OF REVIEW

Under Rule 12(c), "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Herbert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citations omitted). A motion for judgment on the pleadings may be granted if the moving party is entitled to judgment as a matter

3

of law. *NZ Lamb Co. v. United States*, 40 F.3d 377, 380 (Fed. Cir. 1994); see also *Forest Labs., Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007) ("Judgment on the pleadings is appropriate where there are no material facts in dispute and the party is entitled to judgment as a matter of law."); *Universal Steel Prods. v. United States*, 495 F. Supp. 3d 1336, 1342 (Ct. Int'l Trade 2021). A ruling on a motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure ("FRCP") 12(b) for failure to state a claim. See *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995). This motion is within the time limit set by the Court's Scheduling Order (ECF No. 16, March 8, 2024).

## ARGUMENT

1.  *Customs abused the protest process to decline to implement a lawfully obtained exclusion from Section 232 tariffs.*

Defendant CBP admits that the Protest was denied because the Entry included an HTSUS classification that CBP belatedly found to be incorrect. However, CBP had confirmed the accuracy of the HTSUS classification included in the Entry. When the exclusion request was posted, the classification was confirmed by CBP, and when it was approved in December 2020 the correct tariff classification was confirmed again. Upon liquidation of the Entry in question in this case, CBP confirmed the correct classification yet again.

The Exclusion provided the applicable HTSUS classification and the precise specifications of the imported product which support that classification. Defendant's answer did not contest that the specifications of the Exclusion and the relevant Line Items of the Entry were identical. Plaintiff reasonably relied upon Defendant's confirmation of the HTSUS classification included in the Entry and had absolutely no reason to suspect it would (or could) later be changed; CBP has admitted that the Entry was not reliquidated to change the classification. By changing the HTSUS

classification in the Entry without prior notice, Defendant deprived Plaintiff of the opportunity to protest this material change.

The relevant regulations implementing Proclamation 9705 and later Proclamations require that the Bureau of Industry and Security ("BIS") rely on CBP to assure that the correct HTSUS classification be provided on each exclusion request when the request is posted online for public comment. This can be readily seen by reference to the Proclamations and interim final rules in place at all times relevant to this case:

1. Presidential Proclamation 9705 (March 8, 2018)
2. Presidential Proclamation 9711 (March 22, 2018)
3. Interim final rule on exclusions (March 19, 2018)
4. Amended interim final rule on exclusions (September 11, 2018)
5. Amended interim final rule on exclusions (June 12, 2019)

Proclamation 9705 provides ample proof that product exclusions are a critical part of the structure of the Section 232 steel remedies. Section (3) of that Proclamation provides: "If the Secretary [of Commerce] determines that a particular steel article should be excluded, the Secretary shall … notify … [CBP] … concerning such article *so that it will be excluded from the duties described in clause 2 of this proclamation.*" Proclamation 9705, 83 Fed. Reg. 11625, 11627 (March 15, 2018).[1] No provision of any proclamation or any regulation authorizes CBP to decline to implement an exclusion solely because CBP decides to change the HTSUS classification on the Entry, after having affirmed it as part of the exclusions process. The Complaint alleges, and Defendant's answer does not deny, that the classification and specifications on the liquidated Entry matched those on the approved Exclusion.

---

[1] The authority to administer the exclusions process has been delegated to Commerce's Bureau of Industry and Security, or BIS. See Proclamation 9705, section (3), 83 Fed. Reg. at 11627.

BIS amended the regulations governing steel product exclusions in September 2018 to respond to numerous public comments regarding the regulations issued the previous March (15 CFR Part 705, Appendix 1). These changes clarified the role of CBP in the exclusion process, revealing that the HTSUS classification was to be determined as a prerequisite to posting the exclusion request online to seek public comment. The September 2018 Federal Register notice states that the correct HTSUS classification, along with precise product specifications, "is essential" to permit potential objectors to determine whether "the requested product is or readily can be made in sufficient quantity and quality by domestic manufacturers…" 83 Fed. Reg. at 46035.

These requirements were met with the online publication of the Exclusion request, which included the HTSUS classification that CBP belatedly and incorrectly rejected. While there was an objection to the exclusion request, the objector raised no issue about the HTSUS classification. More importantly, CBP had the obligation under the BIS regulations noted above to review the HTSUS classification and notify BIS, preventing publication of the exclusion request if CBP determined that the HTSUS classification in the request was incorrect. Their failure to notify BIS of an incorrect HTSUS classification would have put potential objectors at a disadvantage and undermined the exclusion process.

BIS approved the Exclusion with the HTSUS provided in the exclusion request, which matched the classification and specifications in the Entry. CBP attempts, by the late change in the tariff classification, to reject the decision of BIS to approve this exclusion. There is no regulation or statute that grants authority to CBP to overrule and ignore a decision of BIS.

CBP had a second opportunity to review the correct HTSUS classification: at the time an exclusion request is up for approval, CBP again is expected to affirm the correct HTSUS

classification. Paragraph (h)(3)(ii) of the exclusion regulation "emphasize[s] that [coordination between BIS and CBP] is an important component in ensuring that the approved exclusion request can be properly implemented—*meaning that the HTSUS statistical reporting number provided by the requester is in fact correct.*" 83 Fed. Reg. at 46053 (emphasis added).

A third opportunity for CBP to get the classification right was at liquidation. In this case, CBP liquidated the Entry with the HTSUS classification asserted at the time of entry. Again, Defendant has admitted that the liquidation was "no change."

The history of the proclamations adjusting steel imports and the implementing regulations therefore provide CBP two opportunities to coordinate with BIS before exclusions are approved, along with an additional opportunity to address the classification at liquidation. On all three occasions, CBP determined that the HTSUS classification in the Exclusion and the Entry was consistent and correct.

2. *The denial of the protest was contrary to the proclamations and the BIS regulations.*

Under the relevant BIS rules, the role of Customs was to facilitate the *implementation* of the Exclusion, not to block BIS's decision. They complied with their obligation to coordinate with BIS when the exclusion request was published, and when BIS determined to grant it, by concurring with the offered HTSUS 10-digit classification number. At liquidation, CBP again determined that the classification was correct. Thus, CBP complied with its obligation under the proclamations by "ensuring that [a] submitted exclusion request used the correct HTSUS statistical reporting number," and was thus "implementable." 83 Fed. Reg. at 46045.

According to the recognized principle of "presumption of regularity," we can assume that CBP fulfilled its obligation to ensure the HTSUS classification was correct in in connection with posting the Exclusion for public comment, and the approval of the Exclusion. The liquidation of

7

the Entry (the specifications in both the Exclusion and the Entry are identical) further confirmed the classification.

Courts must assume that what appears regular *is* regular. Official government acts are entitled to a "presumption of regularity," which presumes that public officers have properly discharged their duties in the absence of clear contrary evidence. *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed. Cir. 2001) ("courts ... presume that what appears regular is regular [and shifts the burden] to the attacker to show the contrary." (*citing United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15, (1926))). The regulations at issue demand that CBP check to make sure Exclusions are "implementable." 83 Fed. Reg. at 46045. BIS specifically notes therein that the correct tariff classification is an element of "implementability." It is essential that domestic manufacturers who import products internationally be able to rely on CBP adhering to its own regulations and obligations. The notion that CBP can, at a whim, unilaterally change the HTSUS classification of a liquidated entry without reliquidation after having approved the classification on multiple instances creates an untenable situation where importers will be unable to predict the cost of importation in any meaningful way.

3. *Unlike ordinary protest denials, this one frustrated the Section 232 scheme proclaimed by the President and administered by BIS.*

The determination of the correct HTSUS classification is an integral part of the Section 232 scheme. Consistently sustaining the offered classification throughout the exclusion process, CBP, in this case, furthered the purposes of Section 232 relief by determining at the outset of the process the correct HTSUS classification, thereby offering a fair chance to domestic producers to challenge the exclusion. But belatedly changing the classification, after having affirmed it three times, frustrated and undermined the exclusion process. The protest denial failed to examine relevant issues raised by Plaintiff and simply substituted CBP's novel judgment in November 2021

(the date of the Protest's denial) for its earlier judgments at the time of the posting of the exclusion request (May 2020) and its approval (December 2020). It also improperly attempted to overrule the judgment of BIS that the exclusion should be implemented.

4. *The protest procedure was the only means available to obtain a refund.*

CBP may believe that the Protest in this case was just like any other protest of a liquidated entry, but it was far from it.

In a typical protest, the importer challenges the liquidation of an entry because CBP made an incorrect determination regarding said entry. Here, the only ground for a protest was that Section 232 duties were paid and a protest to apply the approved Exclusion retroactively was the only way to obtain a refund. There was no impropriety in CBP collecting the Section 232 duties at the time of entry, because the exclusion request was still undecided. Customs had Plaintiff's funds not because it had acted improperly, but because the Exclusion had not yet been approved. Once it had been, a refund application in the form of a protest was necessary.

The presidential proclamations make clear that approved exclusions apply "retroactively to the date the exclusion request was posted for public comment." Procl. 9711, Sec. (7), 83 Fed. Reg. 13361, 13364 (March 28, 2018). *See also* Proc. 9777, Sec. (5), 83 Fed. Reg. 45025, 45028 (September 4, 2018), changing the effective date of exclusions to the date the exclusion request was submitted to the Department of Commerce.

When the Entry was liquidated in March 2021, Plaintiff determined (and the Government's answer admits) that a protest was the only means available to obtain refund of duties on the Entry that had already been paid. The Protest described in the Complaint limited its reach to asserting that relevant portions of the Entry were excluded from Section 232 tariffs by virtue of the Exclusion. The relevant line items of the Entry matched the description and specifications

9

included in the approved Exclusion. Moreover, the HTSUS classification on the Entry matched the HTSUS classification on the Exclusion.

The Exclusion indicated, correctly, that the end use of the imported goods would be processed into perforating gun assemblies that would be used in domestic oil and gas production. Plaintiff knew the actual use and the specifications, including inner diameter, straightness, maximum grain size and other required specifications of the imported products, took the tubes out of the general description of "other" pipes and tubes that CBP belatedly chose after the fact, without providing an opportunity for Plaintiff to challenge that material change. The imported tubes were, if fact, designed specifically for "downhole" use.

Instead of implementing the Exclusion, CBP rejected the tariff classification on the Entry, which was identical to the classification on the Exclusion. This classification was evaluated by CBP at least three times and reaffirmed on each occasion. The denial of the Protest by CBP effectively denied an exclusion approved by BIS. This plainly undermines the exclusion mechanism.

Plaintiff, a domestic producer of perforating gun assemblies used in oil and gas production, showed that it could not obtain tubes for perforating gun assemblies domestically and prevailed in the Exclusion process, despite an objection from an alleged domestic producer of the article in question. BIS determined that the domestic industry producing perforating guns would be aided by an exclusion, and that the exclusion would not undermine the operation of the Section 232 tariffs or harm the national security. When the approved Exclusion was presented to CBP in the form of a protest (the only method available), the Entry matched the Exclusion in every particular, including the HTSUS classification and specifications.

10

Thus, even if the tariff classification asserted at the time of entry was incorrect (it was not incorrect in this case) Customs may not second-guess itself in a protest that only raised the issue of the application of an approved exclusion when a valid exclusion permits retroactive refunds.

As a legal matter, protests are the vehicle for refund of Section 232 duties. Having determined, at liquidation, that the tariff classification of an entry was correct ("no change" liquidation), the protest is simply to assure that the exclusion and the entry are consistent with each other. Parties, including Commerce (BIS) and the importer, are entitled to rely on the determinations by Customs concerning the correct tariff classification of the Exclusion and the Entry.

Customs seeks to retain money that rightfully belongs to Plaintiff.

5.   *Analysis.*

The pleadings in this action show that the only material issues are legal in nature. The Exclusion describes in detail the specifications and uses of the imported material. BIS determined, over the objections of one domestic company, that the material was not reasonably available from domestic sources.

On at least three occasions, (before posting of the exclusion request for public comment, before the approval of the Exclusion was announced, and on liquidation of the Entry that matched the Exclusion) CBP had the responsibility to review all the material specifications, including the HTSUS statistical reporting number (the 10-digit classification) in the Exclusion and the Entry. On all these occasions, CBP determined that the HTSUS classification asserted in the Exclusion and the Entry were correct. BIS relied on this conclusion in approving the Exclusion. The job of CBP thereafter was to implement the Exclusion and ensure that the specifications in the Entry matched those in the approved Exclusion.

Because the duties had been paid and the Entry had already liquidated, the protest process was the only method of obtaining a refund of the Section 232 duties. Under the circumstances, whatever the rule for protests in general, the multiple determinations that the HTSUS classification in the Entry was correct could not be undone through an after-the-fact determination.

Plaintiff contends that CBP has improperly attempted to frustrate the exclusion process by materially changing the Entry by adopting a new HTSUS classification without proper notice or opportunity to protest said change. The protest denial must therefore be rejected by this Court.

## **CONCLUSION**

For the reasons stated herein, Plaintiff urges this Court to grant the Motion for Judgment on the Pleadings and order CBP to refund the Section 232 duties to Plaintiff.

Date:  June 21, 2024                    Respectfully submitted,

/s/ Lewis E. Leibowitz
*The Law Office of Lewis E. Leibowitz*
5335 Wisconsin Ave., N.W., Suite 440
Washington, DC 20015
Telephone No.: (202) 617-2675
Email: lewis.leibowitz@lellawoffice.com

*Attorney for Plaintiff*

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| G&H DIVERSIFIED MANUFACTURING LP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant. )<br>) | Court No. 22-00130 |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings is in compliance with Chambers Procedure Rule 2(B) and contains 3439 words.

Date: June 21, 2024

Respectfully submitted,

/s/ Lewis E. Leibowitz
*The Law Office of Lewis E. Leibowitz*
5335 Wisconsin Ave., N.W., Suite 440
Washington, DC 20015
Telephone No.: (202) 617-2675
Email: lewis.leibowitz@lellawoffice.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all participants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ *Lewis E. Leibowitz*
Attorney for Plaintiff