UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

_____
                                                        :
G&H DIVERSIFIED MANUFACTURING LP,                       :
                                                        :
                              Plaintiff,                :            Court No. 22-00130
                    v.                                  :
                                                        :
UNITED STATES,                                          :
                              Defendant.                :
_____:

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment on the pleadings as to Counts I,

III, and IV of the Corrected Complaint (ECF No. 9), defendant's response thereto; and other

papers and proceedings had herein; it is hereby

ORDERED that plaintiff's motion be, and hereby is, denied.


                                        _____
                                          TIMOTHY M. REIF, JUDGE


Dated: New York, New York
       This _____ day of _____ , 2024.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

_____
                                              :
G&H DIVERSIFIED MANUFACTURING LP,             :
                                              :
                          Plaintiff,          :          Court No. 22-00130
                   v.                         :
                                              :
UNITED STATES,                                :
                          Defendant.          :
_____:


---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO COUNTS I, III, AND IV OF THE CORRECTED COMPLAINT**

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:      /s/ Aimee Lee
         AIMEE LEE
         Assistant Director
         International Trade Field Office

Of Counsel:                              /s/ Guy Eddon
Valerie Sorensen-Clark                   GUY EDDON
Office of Assistant Chief Counsel        Trial Attorney
International Trade Litigation           International Trade Field Office
U.S. Customs and Border Protection       Department of Justice, Civil Division
                                         Commercial Litigation Branch
                                         26 Federal Plaza, Room 346
                                         New York, New York 10278
                                         Tel. No. 212-264-9232 or 9230
                                         *Attorneys for Defendant*

# **TABLE OF CONTENTS**

BACKGROUND ................................................................................................ 1

   A.  Section 232 Duties and the Exclusion Process .................................... 2

   B.  G&H's Exclusion Request and the Entry at Issue ............................... 4

   C.  The Protest and Procedural History ..................................................... 6

SUMMARY OF ARGUMENT ......................................................................... 7

ARGUMENT ..................................................................................................... 8

   I.  UNDER THE APPLICABLE STANDARD OF REVIEW, G&H'S MOTION MUST BE DENIED ................................................................. 8

   II.  G&H IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS .......................... 11

     A.  CBP's Applications Of The Exclusion Requires Verification, Including Consideration Of The Classification Of The Imported Goods ................................. 11

     B.  CBP Did Not Make A Classification Determination Prior To G&H's Protest ......... 13

     C.  CBP Correctly Evaluated G&H's Claimed Classification At The Time Of Protest . 18

     D.  G&H Had Options To Ensure That The Section 232 Exclusion Could Be Applied To The Subject Entry ................................................................. 19

CONCLUSION ................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Power Pull Corp. v. United States,*
2015 WL 150279 (Ct. Int'l Trade Jan. 13, 2015) ........................................................ 9

*Brother Int'l Corp. v. United States*,
246 F.Supp.2d 1318 (2003) ........................................................................................ 17

*Coyer v. HSBC Mortg. Servs., Inc.*,
701 F.3d 1104 (6th Cir. 2012) ...................................................................................... 9

*Faus Group, Inc. v. United States*,
581 F.3d 1369 (Fed. Cir. 2009)..................................................................................... 8

*Forest Labs., Inc. v. United States*,
476 F.3d 877 (Fed. Cir. 2007)....................................................................................... 8

*Kent International, Inc. v. United States*,
17 F.4th 1104 (Fed. Cir. 2021) .................................................................................... 17

*Kent Displays, Inc. v. United States,*
698 F.Supp.3d 1339 (Ct. Int'l Trade 2024) ......................................................... 12, 13

*Lerner New York, Inc. v. United States*,
908 F. Supp. 2d 1313 (Ct. Int'l Trade 2013) ................................................................ 8

*Motorola, Inc. v. United States,*
436 F.3d 1357, 1367 (Fed. Cir. 2006).......................................................................... 17

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998)..................................................................................... 8

*Under the Weather, LLC v. United States,*
2024 WL 4056612 (Court of Intl. Trade 2024) .......................................................... 18

*Victoria's Secret Direct, LLC v. United States*,
769 F.3d 1102 (Fed. Cir. 2014)..................................................................................... 8

**HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES**

**Chapter 73**

Heading 7304 ................................................................................................................. 2

Subheading 7304.29.61................................................................................................. 19

ii

Subheading 7304.29.6115.................................................................................*passim*

Subheading 7304.59.80............................................................................................ 19

Subheading 7304.59.8020............................................................................2, 6, 10, 18

**Chapter 85**

Heading 8543

Subheading 8543.70.99.60....................................................................................... 13

**Chapter 99**

Heading 9903

Subheading 9903.80.01.....................................................................................2, 3, 4, 18

**Statutes**

19 U.S.C. § 1862.......................................................................................................... 2

28 U.S.C. §1581(a)................................................................................................ 8, 15

**Rules**

USCIT Rule 12(c)............................................................................................ 7, 8, 18

**Regulations**

15 C.F.R. § 705.......................................................................................................14, 15

19 C.F.R. § 142.6(a)(4)...................................................................................11, 12, 21

19 C.F.R § 177.1(d)(1)......................................................................................5, 11, 21

19 C.F.R § 177.12(c)(1)(i) ..................................................................................... 18

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, FED. PRAC. AND PROC. § 1367 (3d Ed. 2004)........ 8

*CSMS #42566154 - Section 232 and Section 301 – Extensions Requests, PSCs,*
*and Protests* (May 1, 2020),
available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/289820a............. 20

*Proclamation 9705, Adjusting Imports of Steel Into the United States,*
83 Fed. Reg. 11, 62 (March 15, 2018) ..........................................................2, 3, 4, 18

*Proclamation 9772, Adjusting Imports of Steel Into the United States,*
83 Fed. Reg. 40,429 (Aug. 15, 2018) ......................................................................... 3, 18

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

_____
                                        :
G&H DIVERSIFIED MANUFACTURING LP,       :
                                        :
                    Plaintiff,          :          Court No. 22-00130
          v.                            :
                                        :
UNITED STATES,                          :
                    Defendant.          :
_____ :


### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS I, III, AND IV OF THE CORRECTED COMPLAINT

Defendant, United States (the Government), submits this memorandum of law in opposition to the motion for judgment on the pleadings as to Counts I, III, and IV of the Corrected Complaint filed by plaintiff, G&H Diversified Manufacturing LP (G&H).

### BACKGROUND

At issue in this action is the correct classification of certain steel tubes from Belarus which affects whether G&H's claimed exclusion applies. Plaintiff G&H contends that the subject steel tubes are properly classified under statistical subheading 7304.29.6115[1] of the Harmonized Tariff Schedule of the United States (HTSUS).[2] U.S. Customs and Border Protection (CBP or Customs) determined that the steel tubes are properly classified under

_____

[1] Subheading 7304.29.6115, covers "casing, tubing and drill pipe, of a kind used in drilling for oil or gas" that have "an outside diameter not exceeding 114.3 mm" and that have "a wall thickness not exceeding 9.5 mm." The 9th and 10th digits of the Harmonized Tariff Schedule of the United States (HTSUS) provision (and accompanying text) comprise the statistical suffix to the provision and are not statutory. We nevertheless include them here because they are relevant to G&H's claim that the subject merchandise is excluded from Section 232 duties, as discussed herein.

[2] All citations to the HTSUS are to the 2020 version, Revision 10, which contains the text of the relevant provisions in force at the time of entry.

statistical subheading 7304.59.8020,[3] HTSUS.  Both provisions are duty-free; however, both are subject to classification under secondary heading 9903.80.01,[4] HTSUS, which provides for additional duties under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862 (Section 232).  Whether Section 232 duties are properly assessed in this case turns on the question of the primary classification of the imported merchandise in either 7304.29.6115 or 7304.59.8020, HTSUS, as G&H's exclusion only covers steel tubes classified under 7304.29.6115, HTSUS.  Because CBP determined that the steel tubes are properly classified under 7304.59.8020, the exclusion does not apply, and the goods are subject to additional Section 232 duties.

### A.  Section 232 Duties and the Exclusion Process

Proclamation 9705 established a twenty-five percent tariff on imports of most steel products assessed pursuant to Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862.  *Proclamation 9705, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625, 11,627 clause 3 (Mar. 15, 2018) (Proclamation 9705).  In implementing the steel tariff, the President "authorized [the Department of Commerce] to provide relief from the additional duties set forth in clause 2 of this proclamation for any steel article determined not to be

---

[3]  Subheading 7304.59.8020, covers "Tubes, pipes and hollow profiles, seamless, of iron (other than cast iron) or steel: Other, of a circular cross section, of other alloy steel: Other: Other: Other: Other: Other: having an outside diameter of 38.1 mm or more but not exceeding 114.3 mm: having a wall thickness of 6.4 mm or more but not exceeding 12.7 mm."

[4]  Since the text of 9903.80.01 is not inferior to any other text, it is properly referred to as a heading, and not a subheading.  At the time of entry, heading 9903.80.01 assessed additional twenty-five percent *ad valorem* duties on "[p]roducts of iron or steel provided for in the tariff headings or subheadings enumerated in note 16 to this subchapter, except products of [specifically listed countries] or any exclusions that may be determined and announced by the Department of Commerce." In turn, U.S. Note 16(b)(iii) to subchapter III states that "the rates of duty set forth in heading 9903.80.01 [ . . . ] apply to [ . . .] tubes, pipes and hollow profiles provided for in heading 7304 [ . . . ]."

2

produced in the United States in a sufficient and reasonably available amount or of a satisfactory

quality" "and [] also [] to provide such relief based upon specific national security

considerations." Proclamation No. 9705, 83 Fed. Reg. at 11,627. Thus, an importer may apply

for and obtain an exclusion from such duties from the Department of Commerce (Commerce).

Heading 9903.80.01 was added to the HTSUS, which by their terms exclude merchandise

covered by "exclusions determined and announced" by Commerce. Proclamation 9705; *see also*,

Presidential Proclamation No. 9772, *Adjusting Imports of Steel Into the United States*, 83 Fed.

Reg. 40,429 (Aug. 15, 2018) (Proclamation 9772).

      To obtain an exclusion, the importer must first submit a request for an exclusion from the

Department of Commerce for a particular product. When an importer submits its product-

specific request the submission must include information such as the submitter's name, date of

submission, description of the product, and the 10-digit HTSUS statistical reporting number.

Commerce reviews the submission, along with any objections to the exclusion request, to

determine whether the product is not produced in the United States in a sufficient and reasonably

available amount. In addition, an internal program uses automated conditional statements to

compare technical preconditions of the asserted subheading, *e.g.*, chemistry and dimensions, to

the claimed characteristics of the product that is the subject of the exclusion request in order to

determine whether the product generally meets the prescribed quantitative criteria for a particular

subheading. This automated check can catch certain technical errors by the requester at the time

the exclusion request is submitted, but the circumstance that an exclusion request is accepted by

the system does not ensure that it is correct. The automated checks cannot evaluate qualitive

aspects of the asserted classification against the proposed product, such as, for example, whether

the product is *used* in a certain industry.

3

If Commerce grants an exclusion request to an importer, then, to receive the benefit of the exclusion, the importer must seek to apply the exclusion and "provide any information that may be required, and in such form, as is deemed necessary by CBP." Proclamation 9705, Annex (U.S. Note 16(d)). A granted exclusion does not automatically exempt an importer from the applicable Section 232 duties. When an exclusion is approved, it applies to "merchandise described in the exclusion request and classified in the 10-digit provision of the Harmonized Tariff Schedule of the United States (HTSUS) claimed in the exclusion request." *Decision Memorandum for Exclusion Request No. 85773*, BIS Decision Document – Steel Section 232 Remedy Exclusion Request (Dec. 4, 2020) at 2 (Exh. 1). Moreover, approval of the exclusion request "does not constitute a ruling … or official confirmation of the correct provision under the Harmonized Tariff Schedule of the United States" for the product for which the exclusion was requested. *Id.*

**B. G&H's Exclusion Request and the Entry at Issue**

On May 2, 2020, G&H entered the subject tubes under cover of Entry No. BDG-00531692 through the Port of Houston, Texas. Summons (ECF No. 1); Corrected Compl. ¶ 40 (ECF No. 9). G&H contends that the "[e]ntry included three line items, each of which was a type of perforating gun steel used in the manufacture of perforating guns in the United States." Compl. ¶ 40. G&H contends that it classified "Line Item 001" under subheading 7304.29.6115, HTSUS, duty-free. Compl. ¶ 41. That HTSUS subheading is duty-free, and subject to additional Section 232 duties of twenty-five percent *ad valorem* under subheading 9903.80.01, HTSUS. *Id.* G&H contends that it paid Section 232 duties in the amount of $240,533.11 for the subject tubes

entered in Line Item 001.[5]  *Id.*  The remaining line items in this entry are not at issue in this action.

Also on May 2, 2020, G&H submitted a request to Commerce for an exclusion from Section 232 duties for the subject merchandise through the Section 232 Exclusion Portal operated by the Department of Commerce's Bureau of Industry and Security's (BIS).  Compl. ¶ 19; Answer ¶ 19; *see also*, https://232app.azurewebsites.net/Forms/ExclusionRequestItem/85773.  By its request, G&H represented that the correct classification for the product covered by the sought exclusion was 7304.29.6115, HTSUS.  *Id.*

On May 13, 2020, G&H's exclusion request posted to the BIS Section 232 Exclusion Portal and was assigned Exclusion Request Identification Number (ERID) 85773.  Compl. ¶¶ 42 and 1.

On December 4, 2020, BIS issued its decision memorandum.  Compl. ¶ 19; Answer ¶ 19; BIS Decision Mem. at 2 (Exh. 1).  BIS granted the exclusion requested under ERID 85773, which, as G&H had requested, was for steel tubes classified under statistical subheading 7304.29.6115, HTSUS.  The BIS decision memorandum included the following language:

> This approval of your exclusion request does not constitute a ruling under Title 19 Part 177, Code of Federal Regulations (19 CFR 177.1(d)(1)), or official confirmation of the correct provision under the Harmonized Tariff Schedule of the United States for your goods.  To be certain of the correct tariff provision,  you may request a ruling by either mailing your request to Director, National Commodity Specialist Division, Customs and Border Protection, 201 Varick Street, Suite 501, New York NY 10014,

---

[5]  It appears that G&H originally entered different size tubes under Line 001, all of which were subject to Section 232 duties that G&H paid on entry, but that G&H is claiming the Section 232 exclusion here for only one of the tube sizes, and therefore the requested refund only applies to a portion of the original entered value for Line 001.

attn: Binding Ruling Request or you may submit your request
electronically at https://erulings.cbp.gov/home.

BIS Decision Mem. at 2 (Exh. 1).

### C.  The Protest and Procedural History

On March 26, 2021, CBP auto-liquidated the entry at issue as entered, under subheading

7304.29.6115, HTSUS.  Compl. ¶ 50.  On April 19, 2021, G&H filed protest no. 5301-21-

107212.  Compl. ¶ 30.  G&H's protest claimed that some of the tubes entered in the subject entry

were covered by ERID 85773, an exclusion from Section 232 duties that BIS had granted after

the date of entry.  Protest Memorandum (ECF No. 6-1 at ECF page 8).  Thus, by its protest,

G&H sought a refund of Section 232 duties in the amount of $240,533.11, plus interest.  Compl.

¶¶ 29-30, *see also,* Protest Memorandum (ECF No. 6-1 at ECF page 9).

On November 22, 2021, CBP denied the protest, concluding that the subject tubes are

properly classified in subheading 7304.59.8020, HTSUS, and not in subheading 7304.29.6115,

HTSUS, as entered by G&H.  Compl. ¶ 53 (*but see* Compl. ¶ 8, incorrectly stating that the

protest was denied on November 22, 2022).  CBP noted that:

> Protest is denied, the pipes in question are not being imported as a
> finished product, they are perforated to create perforated gun tubes
> after importation.  Imported merchandise is properly classified
> under HTSUS 7304.59.8020. Classification in BIS approved
> Exclusion No. 85773 provided does not match above mention
> classification.

*Id; see also,* Protest (ECF No. 6-1 at ECF page 2).

On January 12, 2022, G&H submitted "a request to void the denial of the Protest."

Compl. ¶ 56.

On April 22, 2022, G&H filed its Summons.  *Id.* at ¶ 58.  G&H brought suit to recover

"Section 232 duties in the amount of $240,533.11, plus interest as provided by law."  *Id.* at ¶ 59.

On May 24, 2022, CBP issued HQ H324403, which denied G&H's request to void the protest denial.  Compl. ¶ 57; HQ H324403.

On November 21, 2023, G&H filed its complaint in this matter.  ECF No. 7.  That complaint was subsequently corrected on November 29, 2023.  ECF No. 9.

On February 29, 2024, the Government filed its answer to G&H's operative complaint. ECF No. 14.

On March 8, 2024, the Court entered the operative scheduling order.  ECF No. 16.

On March 20, 2024, the Government served its Rule 26 disclosures to G&H.  Despite multiple requests and reminders, G&H did not serve Rule 26 disclosures to the Government.

On May 30, 2024, the Government served written discovery requests to G&H.

On June 21, 2024, G&H filed the instant motion for judgment on the pleadings in this action.  ECF No. 17.

On August 20, 2024. G&H served written discovery on the Government, including interrogatories and requests for production.

For the reasons that follow, G&H's motion for Judgment on the Pleadings should be denied.

## SUMMARY OF ARGUMENT

Under the standard set forth in United States Court of International Trade (USCIT) R. 12(c), there are facts in dispute and judgment cannot be rendered on the pleadings.  Plaintiff has not established as a matter of law that the product in question is classified in subheading 7304.29.6115, HTSUS, which is a condition of BIS exclusion ERID 85773.

## ARGUMENT

### I.   UNDER THE APPLICABLE STANDARD OF REVIEW, G&H'S MOTION MUST BE DENIED

This action was brought pursuant to 28 U.S.C. §1581(a) to challenge CBP's tariff

classification.  As in all such cases, G&H has the burden of establishing that the Government's

classification of the subject tubes was incorrect, and the Court, then, has an "independent duty to

arrive at the correct result."  *Lerner New York, Inc. v. United States*, 908 F. Supp. 2d 1313, 1317-

18 (Ct. Int'l Trade 2013) (internal citations omitted), *aff'd*, *Victoria's Secret Direct, LLC v.*

*United States*, 769 F.3d 1102 (Fed. Cir. 2014).  Classification decisions by Customs are reviewed

*de novo* by this Court through a two-step analysis.  *Faus Group, Inc. v. United States*, 581 F.3d

1369, 1371-72 (Fed. Cir. 2009).  First, "the proper meaning of the relevant tariff provisions"

must be determined—a question of law.  *Id*. at 1372 (citing *Orlando Food Corp. v. United*

*States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).  Second, the Court must determine "whether the

merchandise at issue falls within a particular tariff provision as construed" – a question of fact.

*Id.*

Judgment on the pleadings, pursuant to USCIT R. 12(c), is warranted where, after an

answer to the complaint has been filed, a party demonstrates that it is entitled to judgment as a

matter of law.  *See Forest Labs., Inc. v. United States*, 476 F.3d 877, 881 (Fed. Cir. 2007).  The

Court, in making its determination, can consider only the pleadings, documents attached thereto,

and matters upon which the Court can take judicial notice.  *See* 5C Charles Alan Wright &

Arthur R. Miller, FED. PRAC. AND PROC. § 1367 (3d Ed. 2004) ("[A] Rule 12(c) motion is

designed to provide a means of disposing of cases when the material facts are not in dispute . . .

and a judgment on the merits can be achieved by focusing on the content of the competing

pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is

central or integral to the claim for relief or defense, and any facts of which the district court will

take judicial notice.") (citations omitted); *see also Am. Power Pull Corp. v. United States*,

No. 14-00088, 2015 WL 15029, *1 (Ct. Int'l Trade Jan. 13, 2015).  "For purposes of a motion

for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the

opposing party must be taken as true, and the motion may be granted only if the moving party is

nevertheless clearly entitled to judgment."  *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104,

1107 (6th Cir. 2012) (citations omitted).

As set forth in the Corrected Complaint and our Answer, the parties do not agree that

classification in subheading 7304.29.6115 is correct.  Compl. ¶ 41; Answer ¶ 41.  Without

discovery and a judicial record created before the Court, there is no basis upon which the Court

can conclude that classification in G&H's entered subheading 7304.29.6115, HTSUS, is correct.

And, in turn, there is no basis on which the Court can determine whether the exclusion applies to

the imported merchandise.  The pleadings in this action do not establish the facts necessary for

judgment in plaintiff's favor.

The "Statement Of Facts" section of G&H's memorandum is unusual in the context of a

motion for judgment on the pleadings.  Pl.'s Mem. at 1-3.  G&H's "Statement of Facts" do not

provide any citations whatsoever to the Government's answer, which would be necessary to

show that there are no facts in dispute such that G&H could be entitled to judgment at this stage

of the litigation.  Furthermore, G&H's "Statement of Facts" consist almost entirely of legal

conclusion that largely mirror the allegations of its complaint.  Essentially, G&H appears to

contend that because the following four facts are correct, it is entitled to judgment:

1) G&H entered the merchandise under 7304.29.6115, HTSUS.

2) G&H requested a Section 232 exclusion for products classified under 7304.29.6115, HTSUS.

    3) Commerce granted G&H's Section 232 exclusion request for products classified under 7304.29.6115, HTSUS.

    4) CBP auto-liquidated the entry as entered under 7304.29.6115, HTSUS.

However, these four facts cannot be the basis for granting G&H judgment on the pleadings. These facts comprise the administrative steps taken by G&H—they do not constitute a determination by CBP that the entered classification was correct.

This case can only be decided by analyzing whether the products at issue are appropriately classified under subheading 7304.59.8020, HTSUS, as CBP determined, or subheading 7304.29.6115, as G&H contends – an analysis that neither the parties nor this Court can undertake without a judicial record created through discovery. Specifically, the Government seeks the opportunity to explore, through interrogatories and document requests, as well as through depositions, the characteristics of the merchandise. The Government has already served G&H with interrogatories and document requests. The fact that G&H served document requests and interrogatories on the Government after filing its motion for the judgment on the pleadings shows that it, too, believes that facts remain to be determined. The judicial record that will be created through fact discovery, including depositions, will assist this Court in its *de novo* review of CBP's classification determination.

As demonstrated below, based only on the pleadings, G&H has failed to establish an entitlement to relief at this stage of the case. The parties have not yet had the opportunity to engage in the fact discovery that will be necessary to develop a proper record in advance of a motion for summary judgment or, if necessary, a trial. Without such a record, the Court cannot decide, as a matter of law, the appropriate classification for the products at issue.

## II.    G&H IS NOT ENTITLED TO JUDGMENT ON THE PLEADINGS

### A.  CBP's Application Of The Exclusion Requires Verification, Including Consideration Of The Classification Of The Imported Goods

A granted exclusion does not automatically exempt an importer from Section 232 duties. G&H is mistaken in its belief that, in reviewing whether entered merchandise is covered by an exclusion from Section 232 duties, CBP merely matches the classification that the importer represents is correct to the claimed exclusion.  Pl.'s Mem. at 5, 6, 9.  Rather, as with any review of entered merchandise, CBP must verify that the merchandise described in the entry documentation was correctly classified by the importer upon entry, as required by the importer's duty of reasonable care, 19 C.F.R. § 142.6(a)(4), that the merchandise is as described in the exclusion request that Commerce granted, and that the tariff classification provided in the decision memorandum is correct.  The mere fact that Commerce issues an exclusion requested by an importer does not mean that tariff classification is settled.  Commerce announces exclusions based on exclusion requests, not entry documentation.  In contrast, when an exclusion is claimed on specific entries, CBP independently verifies that the entry documentation demonstrates the specific mechanical and chemical properties described in the exclusion request, and that the HTSUS classification of the exclusion reflects the correct classification of the merchandise.

G&H represented in its exclusion request that the steel tubes were classified in its claimed tariff provision.  G&H did not seek CBP's advice in making its classification choice. And BIS decision memoranda granting exclusions, which are publicly available on its Section 232 Portal, explicitly state that the exclusion approval "***does not constitute a ruling*** under Title 19 Part 177, Code of Federal Regulations (19 CFR 177.1(d)(1)), ***or official confirmation of the correct provision*** under the Harmonized Tariff Schedule of the United

States for your goods." BIS Decision Mem. at 2 (Exh. 1) (emphasis added). Moreover, it is the importer's responsibility to declare the correct classification for its merchandise on entry. 19 C.F.R. § 142.6(a)(4).

Accordingly, the proper mechanism for an importer to confirm the correct classification of their merchandise is through a ruling request, not through the Section 232 exclusion request mechanism that is submitted to the Department of Commerce. Nevertheless, by its motion for judgment on the pleadings, G&H claims that CBP (and this Court) is somehow precluded from determining the correct classification. As discussed below, a request for an exclusion from Commerce does not involve the fact-specific undertaking that a classification analysis by CBP entails. The fact that the classification of the merchandise covered by the exclusion is now at issue, which may be attributed to G&H's decision to forego seeking confirmation from CBP, does not prevent this Court from determining the correct classification according to the *de novo* review of CBP's protest denial.

This situation is similar to that in the recent case of *Kent Displays, Inc. v. United States*, 698 F. Supp. 3d 1339 (Ct. Int'l Trade 2024). In *Kent Displays*, the importer challenged the denial of its protest of CBP's imposition of twenty-five percent duties on goods from China pursuant to Section 301, on its electronic writing tablets entered under subheading 9013.80.7000, HTSUS, duty-free. *Id*. at 1342. Kent Displays filed a product exclusion request with the U.S. Trade Representative (USTR) to exempt its merchandise classified under 9013.80.7000 from the additional twenty-five percent Section 301 duties. *Id*. at 1343. When it did not receive the exemption, Kent Displays protested the classification of its entry under 9013.80.7000 and 9903.88.01, HTSUS, citing USTR's exclusion letter, and requested a refund of the Section 301 duties assessed. *Id*. at 1344. CBP denied the protest finding that the primary classification

(9013.80.7000) was incorrect because the "merchandise in the instant shipment is an electrical device with an individual function that is more properly classified under HTSUS 8543.70.99.60." *Id*. Subheading 8543.70.99.60 was subject to a 2.6 percent *ad valorem* duty but not Section 301 duties. *Id*. Kent Displays argued that CBP should not examine the underlying classification of the involved goods, but only consider the application of the exclusion and the assessment of Section 301 duties. *Id*. at 1345. The court disagreed, found that classification was not final, and noted that CBP appropriately considered the "classification of the [merchandise] in assessing whether it would be entitled to an exclusion of Section 301 duties when reviewing Kent Display's protest." *Id*. at 1347. The court cited to its "mandate to reach the correct result" and held the issue concerning classification of the merchandise to be properly before it. *Id*. The court thus found CBP's determination to be correct and ordered classification in subheading 8543.70.99.60. *Id*. at 1353.

Likewise, the issue of classification of the imported steel tubes is properly before the Court here. As in *Kent Displays*, CBP, in considering the applicability of the Section 232 exclusion here, made a classification determination of the product that differed from the classification contained in the exclusion. And like *Kent Displays*, the Court here should have the opportunity to consider the correctness of CBP's classification versus G&H's claimed classification after the benefit of discovery and after a record is developed. G&H should not resist the Court's "mandate to reach the correct result" as the possibility exists that classification may be determined in G&H's favor.

**B. CBP Did Not Make A Classification Determination Prior To G&H's Protest**

As a basis for its motion, G&H contends that CBP confirmed G&H's asserted classification. According to G&H, these occasions were:

    a)   the posting of the Exclusion Request on May 13, 2020;

    b)   the approval of the classification in connection with the Exclusion
         determination by BIS on December 4, 2020; and

    c)   the notice of liquidation posted by CBP on March 26, 2021.

Pl.'s Mem. at 2; *see also* Pl's. Mem. at 6-7.  However, none of these instances demonstrates

CBP's affirmative consideration of the merchandise covered by the exclusion and a classification

determination of that specific merchandise.

       The fact that BIS posted the contents of G&H's exclusion request does not constitute a

"decision" on any aspect of that request.  G&H acknowledges that BIS posted ERID 85773 to its

Section 232 Portal on May 13, 2020.  Compl. ¶ 42.  It is not clear how G&H associates an

administrative action by another agency with a substantive and conclusive classification

determination made by CBP.  Regardless of the agency actor, merely posting a party's request,

as entered, and before any final decision has been made, does not constitute a "decision" on any

aspect of that request by any agency involved.  Such requests are posted to make the trade aware

of their contents so that other parties may submit objections.  Here, in fact, G&H acknowledges

that another party did submit objections.  *Id*. ¶¶ 43-46.

       G&H repeatedly asserts that CBP was obligated to determine whether the subheading

G&H reported in its exclusion request was correct, citing 15 C.F.R. § 705, Suppl. No. 1 in

support of its contention.  *See e.g.*, Pl.'s Mem at 3 ("CBP is responsible for reviewing the

accuracy, including the HTSUS classification, of all exclusion requests under the regulations

applicable to steel exclusions.")  However, nothing in 15 C.F.R. § 705, Suppl. No. 1 contains

anything that might be interpreted as requiring CBP to determine whether a classification

reported in an exclusion request is correct.  *See* 15 C.F.R. § 705, Suppl. No. 1 (dated June 13, 2019).[6]

CBP's involvement in BIS's review of exclusion requests is very limited.  Within CBP's role, Section 232 exclusion requests are "reviewed" using an automated program that is designed to check that certain basic, quantitative information, such as chemical or dimensional facts submitted by the exclusion requester satisfies the preconditions required to fall within the requester's claimed tariff provision.  If the information provided by the exclusion requestor conflicts with a precondition assigned to a particular subheading, then the request will be rejected by the system, but this does not equate to a classification determination.  For example, if a request pertained to steel pipe with a certain diameter, such automated review might check whether the subheading listed in the request covers pipe of that diameter.  However, it would not (nor could it), for example, perform the complex analysis of how a particular product is "used" in commerce, or review whether the merchandise possesses the claimed characteristics.  While meeting these automated conditions is necessary to confirm that the claimed characteristics of a product generally meet the criteria for a particular subheading, they are not individually or collectively sufficient to guarantee that the HTSUS subheading identified by the requester is correct as it relates to a particular product – *i.e.*, meeting the necessary conditions for a subheading does not guarantee that the merchandise is correctly classified under that subheading.

_____

[6] We note that even if CBP had the information required to conduct a full review of the proper classification of the subject tubes at the time G&H submitted its exclusion request, this case was brought under 28 U.S.C. § 1581(a) and is reviewed by the Court *de novo*.  The Court has an independent responsibility to review the classification and exclusion eligibility of the subject merchandise, and CBP's actions in that regard are not dispositive.

15

Here, the parties disagree on certain basic facts about the subject tubes.  In particular, the parties disagree whether, in their imported condition, the products are for use in the petroleum and gas industries as required under G&H's asserted classification.  G&H asserts that the subject tubes are classified under subheading 7304.29.6115, HTSUS, which, by its own request, is a criterion for the exclusion it is now claiming.  That provision covers "casing, tubing and drill pipe, *of a kind used in drilling for oil or gas*" that have "an outside diameter not exceeding 114.3 mm" and that have "a wall thickness not exceeding 9.5 mm."[7] (emphasis added).  G&H has not put forth any facts showing that the goods are "of a kind used in drilling for oil or gas" in their condition as imported, nor would such a showing be appropriate in the context of a motion for judgment on the pleadings.  A determination as to whether the specific tubes at issue in this case meet these criteria is inherently factual, and the parties simply do not agree as to these essential facts.

G&H is simply incorrect that the limited, automated-review of the exclusion request in this case constituted a determination as to these facts.  Rather, the automated-review simply evaluated whether there were any inherent inconsistencies between the characteristics as to composition and size *claimed* by G&H and G&H's *claimed* subheading.  For example, had the exclusion request indicated that the pipe at issue had an outside diameter greater than 114.3 mm, it would have been rejected.  But CBP did not confirm, nor could it have confirmed during BIS's exclusion process, that the merchandise in the subject entry exhibited all the required factual characteristics to be covered by G&H's claimed classification.  For example, in reviewing

---

[7] Subheading 7304.29.6115, HTSUS, covers, in full, "Tubes, pipes and hollow profiles, seamless, of iron (other than cast iron) or steel: Casing, tubing and drill pipe, of a kind used in drilling for oil or gas: Other: Tubing: Of other alloy steel: Having an outside diameter not exceeding 114.3 mm: Having a wall thickness not exceeding 9.5 mm."

G&H's protest, CBP requested additional information on the subject tubes from G&H, such as mill certificates and images of the merchandise as imported, which CBP considered in making its determination. Such evidence was not submitted with G&H's exclusion request and could not have been considered by CBP in BIS's exclusion request review process. *See* https://232app.azurewebsites.net/Forms/ExclusionRequest Item/85773.

As noted above, BIS's approval of the requested exclusion expressly noted that the approval was not to be construed as a ruling or official confirmation of the correct HTSUS provision. Accordingly, the exclusion request process and approval did not amount to any decision by CBP, or any other agency, on the classification of G&H's goods.

As for G&H's argument that the auto-liquidation constitutes CBP's confirmation that its claimed classification is correct, that assertion falls flat. G&H contends that CBP's liquidation of the subject tubes under statistical subheading 7304.29.6115, HTSUS, and the subsequent liquidation notice issued by CBP, amounted to a substantive and conclusive "determination" that this was the correct classification for the merchandise. G&H's entry was "auto-liquidated," also known as a bypass entry, meaning that the entry was liquidated automatically as entered by G&H and without any review by CBP personnel. *See, e.g., Brother Int'l Corp. v. United States*, 27 CIT 1, 9, 246 F. Supp. 2d 1318 (2003). Liquidation notices are automatically posted to CBP's bulletin site "Official Notice of Extension, Suspension and Liquidation" (found at https://trade.cbp.dhs.gov/ace/liquidation/LBNotice). Auto-liquidation or bypass liquidation entries "are made without examination or Customs officer review and do not reflect 'treatment' by Customs" that determines classification. *Kent International, Inc. v. United States*, 17 F.4th 1104, 1109 (Fed. Cir. 2021); *see also*, *Motorola, Inc. v. United States*, 436 F.3d 1357, 1367 (Fed. Cir. 2006); *Under the Weather, LLC v. United States*, 2024 WL 4056612, at *15 (Court of Intl.

17

Trade 2024) ("Under 19 C.F.R. § 177.12(c)(1)(i), a treatment was previously accorded by Customs if there was an actual determination by a Customs officer …." (internal quotations omitted)).

Thus, none of these occurrences – the exclusion request, exclusion approval, or notice of automatic liquidation – demonstrates that CBP made an affirmative determination as to the classification of the product covered by the exclusion. And, importantly, none of these events preclude CBP's and this Court's ability to determine the correct classification of the product covered by the exclusion in this case.

**C. CBP Correctly Evaluated G&H's Claimed Classification At The Time Of Protest**

In making its motion for judgment on the pleadings, G&H claims that CBP improperly considered and changed the classification of its goods. Pl's Mem. at 8. However, determining whether heading 9903.80.01 applies is a question of HTSUS classification. Proclamations 9705/9772 added heading 9903.80.01 to the HTSUS, which by its terms excludes merchandise covered by "exclusions determined and announced" by Commerce. To apply these terms CBP must verify that the merchandise as described in the entry documentation exactly matches the merchandise as described in the exclusion requests that Commerce granted. On review of G&H's protest, CBP appropriately considered whether subheading 7304.29.6115, HTSUS, covering "casing, tubing and drill pipe, *of a kind used in drilling for oil or gas*" that have "an outside diameter not exceeding 114.3 mm" and that have "a wall thickness not exceeding 9.5 mm" (emphasis added), correctly encompasses the specific entered merchandise. And CBP further appropriately considered and determined that the proper classification for the tubes is statistical subheading 7304.59.8020, HTSUS, which provides for "Tubes, pipes and hollow profiles, seamless, of iron (other than cast iron) or steel: Other, of a circular cross section, of

18

other alloy steel: Other: Other: Other: Other: Other: having an outside diameter of 38.1 mm or more but not exceeding 114.3 mm: having a wall thickness of 6.4 mm or more but not exceeding 12.7 mm."

As noted above, these classifications are fact-specific and must be verified before an exclusion can be applied to a particular entry.  The classification of the entered merchandise matters.  As with subheading 7304.29.61, HTSUS, subheading 7304.59.80, HTSUS, is a duty-free provision, and articles imported from Belarus that fall under this provision are subject to additional twenty-five percent *ad valorem* Section 232 duties.  The question of which subheading is legally correct will require the Court to engage in a fact-intensive inquiry and will dictate the applicability of the G&H's exclusion to this specific entry.  Judgment on the pleadings is thus inappropriate here.

### D.  G&H Had Options To Ensure That The Section 232 Exclusion Could Be Applied To The Subject Entry

G&H asserts that "[t]he protest procedure was the only means available to obtain a refund" of the Section 232 duties paid on the subject entry.  Pl.'s Mem. at 9.  G&H appears to contend that it was unfair for CBP to make the classification determination upon review of the protest because G&H had no opportunity to administratively challenge the substance of CBP's determination.  G&H, however, could have availed itself of several possibilities.

In terms of administrative options, G&H should have a sought a ruling from CBP to confirm the correct tariff classification for its merchandise before submitting its exclusion request to BIS.  19 C.F.R. Part 177.  A ruling from CBP would have alerted G&H that CBP did not agree with its entered classification, and G&H could then have submitted the correct classification with its exclusion request.

19

G&H also could have filed a Post Summary Correction (PSC) to amend the subject entry after receiving BIS's Decision Memorandum granting ERID 85773.[8]  CBP's public guidance on requesting retroactive refunds for granted Section 232 exclusions advises importers that: "When a product exclusion is granted, an importer may submit a PSC to request a refund on unliquidated entries up to 15 days prior to the scheduled liquidation date (generally within 300 days from the date of entry summary filing)."  *CSMS #42566154 - Section 232 and Section 301 – Extensions Requests, PSCs, and Protests* (May 1, 2020) (CSMS #42566154), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/289820a.  Had G&H filed a PSC to request that the exclusion be applied to the subject merchandise, it may have learned from CBP prior to liquidation that the subject merchandise is properly classified under a different tariff provision than reported in the granted exclusion.  G&H may then have been able to request that BIS correct the HTSUS classification in the exclusion.  Instead, G&H waited three-and-a-half months for the entry to auto-liquidate.

Although not required, G&H also had the option of filing an administrative request to extend liquidation for the subject entry while it was awaiting BIS's decision on the exclusion request.  Cargo Systems Messaging Service (CSMS) #42566154, *Section 232 and Section 301 – Extensions Requests, PSCs, and Protests*, available at, https://content.govdelivery.com/accounts/USDHSCBP/bulletins/289820a.  If G&H had extended liquidation, that extension would also have extended the time that G&H had to file a PSC.

---

[8]  A PSC allows the trade to electronically correct entry summary data.  The trade is responsible for submitting a PSC.  *See* https://www.cbp.gov/trade/programs-administration/entry-summary/post-summary-correction

Thus, G&H's argument that it was limited to filing a protest to obtain a refund is incorrect. As a practical matter, however, G&H may still receive a Section 232 refund after this litigation regarding the classification of the imported merchandise concludes. And, as we point out above, G&H had alternative options to resolve this matter administratively but failed to avail itself of those options. Principally, G&H failed to seek a ruling request from CBP to confirm the correct tariff subheading for its merchandise. Ultimately, it was G&H's responsibility to report the correct classification for its merchandise upon entry—not CBP's responsibility. 19 C.F.R. § 142.6(a)(4).

Given that BIS exclusions are granted to specific importers for merchandise covering specific subheadings, it would have been prudent for G&H to have sought confirmation from CBP on the correct classification of the merchandise before filing its exclusion request. Again, even BIS's decision memorandum makes clear that BIS's approval "does not constitute a ruling under [. . .] 19 CFR 177.1(d)(1)), or official confirmation of the correct provision under the Harmonized Tariff Schedule of the United States for your goods. To be certain of the correct tariff provision, you may request a ruling [from CBP]." BIS Decision Mem. at 2.

G&H asserts that the merchandise is classified under subheading 7304.29.6115, HTSUS, which is a criterion for the claimed exclusion. That provision covers "casing, tubing and drill pipe, of a kind used in drilling for oil or gas" that have "an outside diameter not exceeding 114.3 mm" and that have "a wall thickness not exceeding 9.5 mm." Here, the parties disagree as to whether the goods, in their imported condition, are for use in petroleum and gas industries, as required under G&H's asserted classification. A determination as to whether the specific merchandise included in the specific entries in this case meets these criteria is inherently factual, and the parties do not agree as to these essential facts.

21

G&H is incorrect that the automated check of the exclusion request at issue in this case constituted a determination as to these facts.  As explained above, the automated review simply checked for quantitative inconsistencies between certain characteristics that G&H reported in its exclusion request (such as composition and size) and those aspects of the asserted subheading. CBP did not confirm, nor could it during BIS's exclusion process, that the merchandise in the subject entry exhibited all the required factual characteristics to be covered by G&H's claimed classification.  Until the appropriate discovery is taken, and all relevant information is presented to the Court from both parties, the Court cannot make a determination as to the correct classification, and therefore G&H's motion should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiff's motion for judgment on the pleadings.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Aimee Lee
AIMEE LEE
Assistant Director
International Trade Field Office

Of Counsel:                             /s/ Guy Eddon
Valerie Sorensen-Clark                  GUY EDDON
Office of Assistant Chief Counsel       Trial Attorney
International Trade Litigation          International Trade Field Office
U.S. Customs and Border Protection      Department of Justice, Civil Division
                                        Commercial Litigation Branch
                                        26 Federal Plaza, Room 346
                                        New York, New York 10278
                                        Tel. No. 212-264-9232 or 9230
                                        *Attorneys for Defendant*

Dated:  September 24, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY M. REIF, JUDGE

_____
                                              :
G&H DIVERSIFIED MANUFACTURING LP,             :
                                              :
                           Plaintiff,         :          Court No. 22-00130
                   v.                         :
                                              :
UNITED STATES,                                :
                           Defendant.         :
_____:

## **CERTIFICATE OF COMPLIANCE**

I, GUY EDDON, a trial attorney in the Office of the Assistant Attorney General, Civil

Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for

the foregoing memorandum in opposition to plaintiff's motion for judgment on the pleadings,

relying upon the word count feature of the word processing program used to prepare the

memorandum, certify that this memorandum complies with type-volume limitation under USCIT

Standard Chamber Procedure 2(B) and contains 5,925 words.


                                    /s/ Guy Eddon
                                    Guy Eddon