## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **G&H DIVERSIFIED MANUFACTURING LP,** )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**UNITED STATES,** )<br>)<br>*Defendant.* )<br>) | Court No. 22-00130 |

---

### MOTION FOR JUDGMENT ON THE PLEADINGS—
### REPLY BRIEF OF PLAINTIFF

By:  /s/ Lewis E. Leibowitz
     LEWIS E. LEIBOWITZ
     *The Law Office of Lewis E. Leibowitz*
     5335 Wisconsin Ave., N.W., Suite 440
     Washington, DC 20015
     Telephone No.: (202) 617-2675
     Email: lewis.leibowitz@lellawoffice.com

     *Attorney for Plaintiff*

October 15, 2024

**TABLE OF CONTENTS**

**SUMMARY OF ARGUMENT** ……………………..……………………………………... 2

**ARGUMENT** …………………………………………………………………………….... 4

I. **THE MOTION FOR JUDGMENT ON THE PLEADINGS IS SUPPORTED BY THE STRUCTURE OF THE STEEL EXCLUSIONS PROCESS.** …………………………... 4

II. **CHANGING THE HTSUS CLASSIFICATION IN THE CONTEXT OF THIS PROTEST TO DENY PLAINTIFF REFUND WAS IMPROPER.** ………………….. 9

III. **LIQUIDATION HAS LEGAL SIGNFICANCE.** …………………………….…….. 10

IV. **CBP IS PRESUMED TO HAVE PERFORMED ITS OBLIGATIONS.** …………… 10

**CONCLUSION** …………………………………………………………………….....…… 11

**CERTIFICATE OF COMPLIANCE** …………………….……………………………... 13

**CERTIFICATE OF SERVICE** ……………………………………………...………….. 14

# TABLE OF AUTHORITIES

**CASES**

*Citizens to Preserve Overton Park v. Volpe*,
    401 U.S. 402 (1971) ……………………………………………………………………. 10

*Cyber Power Sys. (USA) Inc. v. United States*,
    586 F. Supp. 3d 1325 (2022) ………………………………………………………….. 9

*Kent Displays, Inc. v. United States,*
    698 F. Supp. 3d 1339 (Ct. Int'l Trade 2024) ………………………………………….. 9

*Kent Int'l, Inc. v. United States*,
    17 F.4th 1104 (Fed. Cir. 2021) …………………………………………………………. 10

*Sickels v. Shinseki*,
    642 F. 3d 1362 (Fed. Cir. 2011) ……………………………………………………... 10

**STATUTES**

19 U.S.C. § 1625(c) ……………………………………………………………………. 10

**RULES**

USCIT Rule 12(c) …………………………………………………………………… 11

**REGULATIONS**

15 CFR Part 701, Supplement 1 …………………………………………………….... 2

15 CFR Part 705, Supplement 1 …………………………………………………… 5, 6

15 CFR Part 705, Supplement 2 …………………………………………………… 6

19 CFR § 159.1 …………………………………………………………………….. 3

**OTHER AUTHORITIES**

*232 Exclusion Process Frequently Asked Questions*
(https://www.bis.doc.gov/index.php/documents/section-232-investigations/2409-section-232-faq/file) ………………………………………………………………………….. 6

Proclamation 9705,
    83 Fed. Reg. 11625 (March 15, 2018) ……………………………………………... 1, 2, 4, 5

Proclamation 9777,
    83 Fed. Reg. 45025 (September 4, 2018) ………………………………………….. 5

*Section 232 National Security Investigation of Steel Imports—Information on the Exclusion Process* (https://www.bis.doc.gov/index.php/232-steel) ……………………………………... 7

*Section 232 Steel and Aluminum Tariff Exclusions Process*,
    85 Fed. Reg. 81060 (December 14, 2020) ……………………………………………… 7

iii

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **G&H DIVERSIFIED MANUFACTURING LP,**  )<br>)<br>*Plaintiff,*  )<br>)<br>v.  )<br>)<br>**UNITED STATES,**  )<br>)<br>*Defendant.*  )<br>) | Court No. 22-00130 |

**MOTION FOR JUDGMENT ON THE PLEADINGS—
REPLY BRIEF OF PLAINTIFF**

Plaintiff G&H Diversified Manufacturing LP ("Plaintiff") submits this Brief in reply to Defendant's memorandum of law ("Def. Br.") (ECF 22) opposing Plaintiff's motion for judgment on the pleadings.

Defendant's "background" description of the Section 232 tariffs and the steel exclusion process contains misstatement and omissions that are important for the Court to consider this Motion. For example, Defendant claims that U.S. Customs and Border Protection ("CBP") enjoys unfettered discretion to decline to apply a granted exclusion because, in the context of a protest, CBP is permitted to open and decide all issues in connection with an entry, regardless of whether the importer raised the issue of classification.

While the above notion may serve as a general rule, for reasons explained in the Motion for Judgment on the Pleadings and herein, the Section 232 exclusion context presents an exceptional situation. Specifically, CBP and the Department of Commerce ("Commerce") determined that the tariff classification for the exclusion request was accurate prior to the request being posted, as provided for in the applicable regulations and publications by the Commerce Bureau of Industry and Security ("BIS"). As Defendant notes, Proclamation 9705, as amended,

authorized the Commerce Department to exclude from Section 232 remedies "any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." Proc. 9705, 83 Fed. Reg. 11625, 11627 (March 15, 2018).

The Commerce regulations (15 CFR Part 701, Supp. 1) require exclusion requests to contain complete chemical and dimensional specifications, testing requirements, end uses and other detailed information. The 10-digit "statistical reporting number" claimed by the requesting party must also be provided. The Exclusion Request contained all information necessary for a "complete" submission within the meaning of the regulations.

Defendant describes the entry of May 2, 2020 (the "Entry") as including several items, including, *inter alia*, the merchandise described in Exclusion No. 85773 ("the Exclusion"). During the protest proceeding, Plaintiff accounted for all the entered merchandise that was covered by the Exclusion. The remainder of the Entry was, Defendant agrees, "not at issue in this action." Def. Br. at 5.

Defendant also agrees that CBP liquidated the Entry on March 26, 2021. We will deal with the significance of this liquidation below. However, refund of the duties paid at the time of entry (May 2, 2020) was requested via protest, because the Entry liquidated before a pre-liquidation post-summary correction could be prepared and submitted. (Complaint, ¶ 20).

## SUMMARY OF ARGUMENT

Defendant claims in its response brief that a properly approved steel exclusion can be negated by a disagreement on the tariff classification where the product excluded is identical to the product entered. Def. Br. at 11.

Plaintiff rejects this argument, as should this Court. The product exclusion system, contrary to Defendant's assertion, compels applying an exclusion to an entry where, as here, the

2

attributes of the excluded product (such as chemistry, dimensions and testing requirements) are identical to those of the entry.  Product exclusion protests to secure a refund of Section 232 duties are different from standard protest proceedings in ways that are central to this case.  CBP's duty is to verify the accuracy of the classification in an exclusion request prior to it being posted by BIS for public comment.  Once the exclusion request is approved, CBP's duty is to apply it to a conforming entry, ensuring that the specifications and intended use match what is in the approved exclusion.  Customs' denial of the Protest breached that duty.

In implementing the Proclamations governing steel and aluminum exclusions, the President delegated broad authority to the Commerce Department to administer the process.  The implementing regulations and guidance gave CBP the responsibility to review the accuracy of the HTSUS classification in each exclusion request before the exclusion request is posted for public comment, as is clearly set forth in the applicable BIS regulations and related guidance.  CBP is presumed to have fulfilled this obligation, under the administrative law doctrine of presumption of regularity.  CBP was consulted and affirmed the tariff classification in the Exclusion Request, as was their responsibility.

The liquidation of the Entry (or any entry) has consequences, regardless of whether CBP "auto liquidated" the Entry or consciously determined the proper classification.  "Liquidation means the final computation or ascertainment of duties on entries for consumption or drawback." 19 CFR § 159.1 (emphasis added).  Classification is a necessary part of that "final computation." Any suggestion that liquidation is not a Customs decision contradicts what "liquidation" means.

In summary, the tariff classification in the Exclusion Request was to be reviewed by CBP for accuracy at the outset of the exclusion process, as the Proclamations, BIS regulations and guidance indicate.  The Entry was liquidated with the same HTSUS classification as the Exclusion.

Because the physical characteristics and use of the entered merchandise matched exactly those same attributes in the Exclusion, it is impossible, legally and logically, for the HTSUS classifications to differ. CBP lacked the authority to veto BIS's approved exclusion merely because it belatedly disagreed with the tariff classification, as CBP approved the HTSUS classification prior to the Exclusion Request being posted for public comment.

## ARGUMENT

### I. THE MOTION FOR JUDGMENT ON THE PLEADINGS IS SUPPORTED BY THE STRUCTURE OF THE STEEL EXCLUSIONS PROCESS.

Defendant opposes Plaintiff's Motion based on the assumption that the belated CBP classification determination must preclude the application of the Exclusion to that portion of the Entry that is relevant to this case. This assertion is plainly flawed. There is nothing in the exclusion process—not the proclamations of the President nor in the language promulgated by BIS under the authority of those Proclamations—that supports Defendant's conclusion. To the contrary, an exclusion is valid and applicable to a Customs entry if it agrees with the description of the merchandise and the HTSUS classification in a liquidated entry. A disagreement based solely on an exclusion's tariff classification at the protest stage is insufficient to block the application of an approved exclusion to a conforming entry.

The structure of the steel exclusion process is based on the language of the relevant Proclamations (9705 and subsequent Proclamations) and the clear delegation of authority over the process to BIS. BIS in turn has published several documents that explain the process.

In Proclamation 9705, the President established the steel exclusion program:

> If the Secretary determines that a particular steel article should be excluded, the Secretary shall, upon publishing a notice of such determination in the *Federal Register*, notify Customs and Border Protection (CBP) of the Department of

4

Homeland Security concerning such article *so that it will be excluded from the duties described in clause 2 of this proclamation.*[1]

There was no provision for CBP to refuse to apply an exclusion to a Customs entry, other than a finding that the exclusion was not consistent with an entry.

In August 2018, the President amended Clause (3) to add a retroactivity provision:

For merchandise entered for consumption, or withdrawn from warehouse for consumption, on or after the date the duty established under this proclamation is effective and with respect to which liquidation is not final, such relief shall be retroactive to the date the request for relief was accepted by the Department of Commerce.[2]

This amendment established that the eligibility for relief from Section 232 duties was retroactive to the date an exclusion request was received by BIS. Previously, the effective date ran from the date the exclusion request was posted online. The amendment meant that the Entry could apply the Exclusion, because the entry date was the same as the filing date for the Exclusion.

In June 2019, BIS moved the electronic filing for exclusions to a specifically tailored Exclusions Portal from the more general website previously used (www.regulations.gov). The Exclusion in this case was submitted to the Exclusions Portal on May 2, 2020.

As part of this change, BIS again amended the regulations (15 CFR Part 705, Supplement 1). As part of the changeover to the Exclusions Portal, and in response to several comments regarding the role of tariff classifications in administering exclusions, BIS deleted language regarding CBP review of the HTSUS classifications in exclusion requests that received no objections and should therefore be approved expeditiously.[3] BIS stated that the language was no

---

[1] Proclamation 9705, clause (3), 83 Fed. Reg. 11625, 11627 (March 15, 2018).
[2] Proclamation 9777, Clause (5), 83 Fed. Reg. 45025, 45028 (September 4, 2018).
[3] The deleted language, referring to exclusions that received no objections, that CBP would be consulted regarding the accuracy of the tariff classification before final approval. ''The U.S. Department of Commerce will work with U.S. Customs and Border Protection (CBP) to ensure that the requester provided an accurate HTSUS statistical reporting number.'' The 2019 change rendered that sentence unnecessary, because all tariff classifications would be settled before an exclusion request was posted for public comment.

5

longer needed, because the role of CBP in reviewing the tariff classification was moved earlier in the process:

> This change is made to reflect a change in the internal business process whereby CBP is being sent the exclusion request for HTSUS validation and exclusion request administrability prior to an exclusion request being posted on regulations.gov. In the 232 Exclusions Portal, CBP will have access to the portal and will be able to receive the exclusion request for conducting the same type of review, but in a more efficient manner than is currently done with exclusion requests submitted in regulations.gov. [4]

"More efficient" clearly means "earlier."

Contemporaneously with the regulatory changes noted above, BIS published a lengthy document to inform the public about the details of the new Exclusions Portal system. One key document is entitled *232 Exclusion Process Frequently Asked Questions* ("FAQs"), published on June 19, 2019. That document describes the evaluation process upon the filing of an exclusion request as follows:

> Once an exclusion request is submitted online, *Customs and Border Protection (CBP) reviews the Harmonized Tariff Schedule of the United States (HTSUS) code cited in the submission for accuracy and provides their response to the Department of Commerce (DOC).* Then, DOC reviews each request for conformance with the submission requirements. Those requirements are set forth Supplements No. 1 and 2 to 15 CFR part 705. If the submission meets the requirements for an exclusion request, it will be posted on the new 232 Exclusions Portal or on regulations.gov (for submissions prior to June 13, 2019) website. FAQs at 15.[5]

In December 2020 BIS published revised regulations dealing with steel and aluminum exclusions. These regulations reinforced the earlier language regarding the role of CBP in

---

[4] 84 Fed. Reg. 26751, 26755 (June 10, 2019). While this discussion was connected to a provision for exclusions that did not receive any objections, it is plainly applicable to those that did. The language in the former rule required Customs involvement before approval of an exclusion request that received no objections because Customs was not necessarily involved in the process before that time. Since June 2019, it was clear that Customs was involved in reviewing the proper HTSUS classification at the time an exclusion request was posted on the new Exclusions Portal, as the exclusion under review here was.
[5] https://www.bis.doc.gov/index.php/documents/section-232-investigations/2409-section-232-faq/file

verifying the accuracy of the HTSUS classifications in exclusion requests prior to their being posted:

> Commerce works closely with CBP. Additional information is provided to CBP to ensure that CBP is able to effectively implement approved exclusions. CBP consults as needed with Commerce if any questions arise regarding the scope of a specific approved exclusion request.[6]

The BIS webpage on the Section 232 exclusion process confirms CBP's responsibility to confirm the HTSUS classification in an exclusion request before it is posted for public comment:

> Once a request is submitted, the U.S. Department of Homeland Security/Customs and Border Protection (CBP) reviews the Harmonized Tariff Schedule of the United States (HTSUS) code cited in the submission for accuracy. If CBP determines the code is inaccurate, the request is rejected upon initial submission and the requester is provided CBP contact information and reason for rejection.
>
> If CBP determines the HTSUS code is accurate, BIS conducts preliminary screening of the exclusion requests, if rejected the submitter is notified for the reason(s), if approved it is posted for a 30-day public comment period. If there are no objections filed against a request, and if there are no national security concerns, the request is approved.[7]

The CBP messages dealing with steel product exclusions do nothing to contradict the BIS guidance requiring CBP to verify the accuracy of the HTSUS classification in an exclusion request prior to it being posted for public comment. The Cargo Systems Messaging Service ("CSMS") messages are consistent with this obligation. Importers must be able to rely on CBP fulfilling its responsibilities. CBP must not disregard its assigned role in ensuring the HTSUS classification in an exclusion request is accurate at the outset. If CBP disregards this responsibility, US importers and their customers can never be confident that an Exclusion will result in a refund of duties. While Customs rulings are available in theory, they are designed to deal with prospective

---

[6] *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060, 81064 (December 14, 2020).
[7] *Section 232 National Security Investigation of Steel Imports—Information on the Exclusion Process* (https://www.bis.doc.gov/index.php/232-steel)

transactions, not entries that have already taken place. Plaintiff had every reason to rely on the HTSUS classification in the approved Exclusion, because it had already been approved by Customs and BIS. In addition, Plaintiff had applied the same HTSUS classification several times before 2020 to identical merchandise.

Applying the clear CBP and BIS procedures to this case, the Exclusion was posted for public comment and was approved by BIS after receiving concurrence of CBP regarding the tariff classification prior to it being posted for public comment. The tariff classification listed in the Exclusion is an integral and inseparable part of the approved Exclusion. If the HTSUS classification is correct in the Exclusion Request, then it must be correct for the conforming Entry, because the specifications and end use of the steel in the two documents are identical. The BIS regulations confirm the obligation of CBP to review the accuracy of the stated HTSUS classification prior to a request being posted. If the specifications, end-use and HTSUS classification of an approved Exclusion match those of an entry, CBP is required to apply the exclusion.

BIS has, therefore, made clear that the CBP review of tariff classifications take place early in the process, before the period for objections has begun, regardless of whether there are any subsequent public objections. It was this process that led Plaintiff (and presumably many others) to conclude that the tariff classification in a posted exclusion request had already been reviewed by CBP for accuracy and that CBP's determination had been related to BIS.

The mere fact that CBP purported to change its mind about the tariff classification in the approved Exclusion, and thereby negate the Exclusion's effect, is flatly inconsistent with the regulatory framework that BIS created under its delegated authority from the President. While CBP may examine an exclusion and reject its application to an entry because the entry and the

exclusion describe *different products*, in this case the tariff classification in the Entry and the Exclusion matched, and there was no discrepancy between the merchandise described in the Exclusion and the relevant portion of the Entry. The tariff classification as applied to the exclusion was a settled matter. The protest never called the classification into question because CBP, BIS and Plaintiff were in accord on that point. And CBP never examined the specifications on the Entry, despite having all the information necessary to do so, refusing to even consider whether the specifications and use in the Entry matched those in the Exclusion. Therefore, CBP overstepped by claiming that the HTSUS classification in the Exclusion was incorrect after having already approved it prior to the Exclusions Request being posted for public comment.

**II.    CHANGING THE HTSUS CLASSIFICATION IN THE CONTEXT OF THIS PROTEST TO DENY PLAINTIFF REFUND WAS IMPROPER.**

Recent cases have raised the issue of whether a CBP classification may be changed in a protest that did not raise that issue. *See Kent Displays, Inc. v. United States,* 698 F. Supp. 3d 1339, 1347 (Ct. Int'l Trade 2024), *citing Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1332 n. 12 (2022). The Court need not reach this issue, because the steel exclusion framework forecloses changing the asserted HTSUS classification, as discussed above. Plaintiff did not address the classification issue in the protest, because CBP had already approved the HTSUS classification prior to the Exclusion Request being posted. Defendant's *sua sponte* raising it was akin to an improper counterclaim. *See Kent Displays, supra.*

In the unusual situation of a protest to obtain a refund, a procedure specifically provided for in the relevant Proclamations regarding steel imports, BIS has conferred upon CBP, at the direction of the President, the responsibility to review tariff classifications set forth in exclusion requests. If an exclusion is granted, the same Proclamations authorize BIS to "notify" CBP "so that it will be excluded from the duties described in clause 2 of this proclamation." 83 Fed. Reg.

9

45025, 45026 (September 4, 2018). A belated reclassification in an approved Exclusion to preclude a duty refund is, therefore, improper.

### III. LIQUIDATION HAS LEGAL SIGNFICANCE.

Defendant argues that "bypass entries" described as akin to "brainless" liquidations are not Customs determinations. The cases cited by Defendant (at Def. Br. 17) are inapposite here because they deal with whether "brainless" liquidations can be used to support an "established and uniform practice" under 19 U.S.C. § 1625(c). *Kent Int'l, Inc. v. United States*, 17 F.4th 1104, 1106 (Fed. Cir. 2021).

Here, a liquidation is a "determination" by CBP of the material elements of an entry, which is binding. The cases cited by Defendant, including *Kent International, supra,* are not on point. Plaintiff is not asserting that CBP had an "established and uniform practice," only that CBP acted consistently throughout the exclusion process in this case, assenting to the tariff classification prior to the exclusion request being posted as well as the liquidation of the entry.

Because liquidation of an entry has legal significance, whether the liquidation of the Entry in this case was "brainless" or a "bypass entry" is irrelevant.

### IV. CBP IS PRESUMED TO HAVE PERFORMED ITS OBLIGATIONS.

CBP was, as Plaintiff has shown, obliged to review the correctness of the tariff classification prior to the exclusion request being posted. Courts have long held that an agency is presumed to have discharged its obligations. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *Sickels v. Shinseki*, 642 F. 3d 1362, 1366 (Fed. Cir. 2011) ("in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their official duties.") (citations omitted). Whether CBP, working with BIS, had such

10

an obligation is clearly a legal question that can be answered at the outset of litigation. CIT Rule 12(c).

Even if CBP were able to rebut the presumption of regularity (so far, the Court only has an unsupported assertion), the legal issue would remain: CBP had the obligation to verify the accuracy of the tariff classification asserted in the Exclusion request before it was posted, and Plaintiff had every reason to believe that CBP fulfilled its obligation.

## **CONCLUSION**

For the reasons stated herein, Plaintiff urges this Court to conclude that Defendant was obligated to confirm the accuracy of the HTSUS classification asserted in the approved Exclusion before it was posted online for public comment. Presumably, under the doctrine of "presumption of regularity," CBP carried out its official responsibility to verify the HTSUS classification. Plaintiff was entitled to rely on that determination in filing a protest for the limited purpose of obtaining the refund of Section 232 duties paid at the time of entry. The tariff classification on the Entry was identical to that on the Exclusion, and the Exclusion was in every material respect consistent with the relevant entered merchandise.

This duty on CBP's part is clear, based on the relevant presidential Proclamations, BIS regulations and guidance. Customs guidance regarding exclusions does not, and properly could not, contradict the BIS regulations and guidance. The President delegated broad authority to the Commerce Department to administer the process, and CBP plays a limited role in that process.

The protest procedure for claiming refunds must conform to the Proclamations and the BIS regulations and guidance. When the Exclusion Request was first posted, when it was approved, and when CBP liquidated the conforming Entry, the tariff classification was set forth clearly and publicly. The liquidation of the Entry (or any entry) has consequences, whether or not CBP "auto

liquidated" the Entry or determined the proper classification after deliberation. This is not a case involving a claimed "established and uniform practice."

     For these reasons, and others given in Plaintiff's motion and this Reply, Plaintiff is entitled to judgment on the pleadings.

Date: October 15, 2024

Respectfully submitted,

/s/ Lewis E. Leibowitz
*The Law Office of Lewis E. Leibowitz* 5335 Wisconsin Ave., N.W., Suite 440
Washington, DC 20015
Telephone No.: (202) 617-2675
Email: lewis.leibowitz@lellawoffice.com

*Attorney for Plaintiff*

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **G&H DIVERSIFIED MANUFACTURING LP,** )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**UNITED STATES,** )<br>)<br>*Defendant.* )<br>) | Court No. 22-00130 |

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing REPLY BRIEF OF PLAINTIFF is in compliance with Chambers Procedure Rule 2(B) and contains 3500 words.

Date: October 15, 2024

Respectfully submitted,

/s/ Lewis E. Leibowitz
*The Law Office of Lewis E. Leibowitz*
5335 Wisconsin Ave., N.W., Suite 440
Washington, DC 20015
Telephone No.: (202) 617-2675
Email: lewis.leibowitz@lellawoffice.com

*Attorney for Plaintiff*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all participants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Lewis E. Leibowitz*
Attorney for Plaintiff
