UNITED STATES COURT OF INTERNATIONAL TRADE
HON. TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| **G&H DIVERSIFIED MANUFACTURING, LP,** )<br>)<br>    *Plaintiff,* )<br>)<br>v. )<br>)<br>**UNITED STATES,** )<br>)<br>    *Defendant.* )<br>) | Court No. 22-00130 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER PROHIBITING DISCOVERY**

Plaintiff G&H Diversified Manufacturing, LP respectfully submits this response to Defendant's motion for a protective order preventing discovery (ECF 49). Defendant's request is extraordinary: an order prohibiting discovery from the Bureau of Industry and Security ("BIS"), the federal agency responsible for administering the Section 232 steel exclusion process at the center of this litigation. Plaintiff squarely presented this issue in its Motion for Legal Ruling (ECF 42), Defendant's response (ECF 46) and Plaintiff's reply (ECF 48), which are before this Court.

In December 2024, this Court held that "there is a genuine dispute of material fact with respect to Customs' role in the exclusion approval process." Slip op. 24-145 at 10, 12 (ECF 26). Plaintiff seeks discovery precisely directed at resolving the dispute of fact identified by this Court. Yet Defendant, by attempting to foreclose any discovery from BIS, acts in contravention of the Court's decision.

The Rules of this Court—and the Federal Rules of Civil Procedure—do not permit a party to avoid discovery by unilaterally rejecting the opposing party's claims. Relevance of the discovery to a claim or defense is required. *Heat & Control, Inc. v. Hester Indus.*, 785 F.2d 1017,

1023 n.7 (Fed. Cir. 1986).  Here, because BIS is uniquely positioned to provide discovery regarding the design and administration of the steel exclusion process, Defendant's motion should be denied.

**I.    DEFENDANT'S MOTION SEEKS TO FORECLOSE DISCOVERY NECESSARY TO RESOLVE GENUINE DISPUTES OF MATERIAL FACTS IDENTIFIED BY THE COURT**

In denying Plaintiff's motion for judgment on the pleadings, this Court held that the Complaint presents a genuine dispute of material fact concerning the role of U.S. Customs and Border Protection ("CBP") in the Section 232 exclusion process.  (ECF 26) Slip Op. 24-145 at 10–12.

In June 2024, after Defendant filed its answer to the Complaint, Plaintiff moved for judgment on the pleadings.  After briefing, this Court denied Plaintiff's motion on the ground that additional evidence and legal analysis were necessary to resolve the issues of the role of CBP in the exclusion process and, if so, the significance of that role.  Slip op. at 9.  Thus, this Court has indicated that additional discovery is required.  Plaintiff's Rule 30(b)(6) deposition notices seek to accomplish this.

Defendant, however, has ignored the Court's decision, which constitutes the law of the case.  *See, e.g., Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024), *citing Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816-17 (1988)(once a court decides an issue, that decision generally governs subsequent stages of the same case).  The discovery Plaintiff seeks is directed squarely at resolving the dispute identified by the Court; namely, the role to which BIS assigned to CBP and expected from CBP in evaluating tariff classifications during the exclusion approval process.

Despite the clarity of this legal principle, Defendant seeks to prohibit Plaintiff from taking discovery from BIS.  Such a prohibition would deny Plaintiff the ability to determine BIS's expectations regarding the timing and substance of these provisions, and whether CBP met those

2

expectations in this case. This claim is not speculative, as shown by the language of BIS regulations, discussed below. Because BIS administered the program at the direction of the President, BIS is the agency best positioned to explain how that process functioned (or should have functioned) in practice.

Granting Defendant's motion for a protective order would therefore undermine the Court's prior ruling by preventing discovery of information the Court determined was necessary to resolve a "genuine dispute of material fact." Slip op. at 10-12.

## II.  BIS IS THE FEDERAL AGENCY CHIEFLY RESPONSIBLE FOR ADMINISTERING THE EXCLUSION PROCESS

The President clearly delegated administration of the Section 232 exclusion process to the Secretary of Commerce, not CBP. *See* Proclamation 9705, 83 Fed. Reg. 11625, 11627 (March 15, 2018). The Commerce Secretary assigned that responsibility to BIS, which, in addition to deciding exclusion requests, promulgated regulations governing how exclusion requests would be reviewed. These regulations were authorized by the President, and Defendant does not question his authority to have made these delegations.

The Proclamations (9705, 9711 and 9777) and the BIS regulations in 2018, 2019 and 2020 demonstrate that the exclusion process was developed by BIS as a coordinated interagency effort involving both BIS and CBP. In short, BIS decided whether an exclusion should be approved, and CBP's job was to implement it. Directly at issue in this case are BIS regulations and accompanying statements in the Federal Register indicating that CBP participated in reviewing exclusion requests for validation of the tariff classification, prior to posting the exclusion request for public comment. This was necessary to ensure that exclusions were "administrable" at the border and that classifications in exclusion requests were valid and accurate. *See Implementation of New*

3

*Commerce Section 232 Exclusions Portal*, 84 Fed. Reg. 26751, 26755 (June 10, 2019) ("New Exclusions Portal Regulations").

In June 2019, about 15 months after the exclusion program was initiated, BIS revised the exclusion process to move CBP's review of tariff classification to the beginning of the exclusion process, stating:

> CBP is being sent the exclusion request for HTSUS validation and exclusion request administrability prior to an exclusion request being posted on regulations.gov.  *Id.*

BIS later confirmed that this 2019 procedural change was necessary to ensure that tariff classification issues were resolved early in the process.  *See* 85 Fed. Reg. 81060, 81061 (Dec. 14, 2020).  In this case, Plaintiff has raised questions about the relationship between CBP's involvement in the exclusion process and CBP's determination in late 2021 that the tariff classification was wrong: was it consistent with its obligations under the exclusion program, or was it actually an unauthorized determination to deny an exclusion that BIS had granted.  The classification issue was to have been settled, according to BIS, before the posting of the exclusion request for public comment.  The BIS regulations are quite clear, and demonstrate that BIS expected CBP to review tariff classifications for validity and accuracy and identify problems, if any, before exclusion requests were posted for public comment.  BIS certainly stated these obligations with respect to exclusions, and whether they met them in the exclusion request at issue is a central question in this case.

BIS is the only agency capable of providing testimony regarding its own expectations, as the lead agency in administering exclusions, of CBP during the exclusion review process, the procedures BIS established for reviewing tariff classifications, and how those procedures were

implemented in practice.  Defendant's attempt to shield BIS from discovery would therefore deny Plaintiff the opportunity to obtain evidence directly relevant to the claims before this Court.

The centrality of tariff classification to the exclusion process is confirmed by BIS's own regulatory explanation of the purpose of CBP's participation.  BIS repeatedly emphasized that exclusions had to be "administrable" at the border, meaning that CBP must be able to identify qualifying merchandise reliably.  *See* New Exclusions Portal Regulations, 84 Fed. Reg. at 26755 (explaining that CBP would review exclusion requests for "HTSUS validation and exclusion request administrability" prior to publication).  Accurate tariff classification is indispensable to that determination because CBP administers the Harmonized Tariff Schedule and relies on tariff classification to determine whether merchandise falls within the scope of tariff measures or exclusions.  *Id*.  BIS therefore revised the exclusion process in 2019 to ensure that classification issues were reviewed before an exclusion request was posted for public comment.  BIS later confirmed that moving the HTSUS review to the outset of the process reduced denials arising from classification problems identified later in the review process.  *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81060, 81061 (Dec. 14, 2020).

These regulatory explanations demonstrate that the accuracy of tariff classification was not a peripheral detail but a core prerequisite for determining whether an exclusion could be implemented at the border.  While Defendant argues in its Motion for Protective Order (ECF 49) that BIS did no injury to Plaintiff because it approved the exclusion request, that is not necessarily true.  BIS clearly established these procedures and relied on CBP to conduct the classification validation necessary to ensure administrability.  Therefore, discovery from BIS is essential to determine how those procedures were intended to operate and whether they were followed in the exclusion request at issue in this case.

## III. DISCOVERY FROM BIS IS NECESSARY BECAUSE BIS IS THE RELEVANT DECISION-MAKING AGENCY

Defendant's motion overlooks a fundamental feature of the exclusion program at issue in this case: BIS—not CBP—was the agency charged by Presidential Proclamation with designing and administering the steel exclusion process. Proclamation 9705, 83 Fed. Reg. at 11627. As a result, BIS is the agency whose policies, expectations, and decision-making framework governed the classification review that Plaintiff challenges. Discovery directed to BIS is therefore necessary to resolving the "genuine dispute of material facts" already identified by this Court. Slip op. at 10, 12.

Under long-settled administrative law principles, judicial review of agency action must be based on the "whole administrative record," meaning all documents and materials directly or indirectly considered by agency decisionmakers. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Courts have repeatedly emphasized that an agency may not unilaterally limit judicial review by selecting only those materials it chooses to disclose. *Id*. Rather, the record includes all materials considered by agency officials responsible for the decision to approve the HTSUS classification provided in the exclusion.

Where, as here, the administrative framework involved two agencies performing coordinated functions, the materials and explanations provided by the lead decision-making agency are clearly relevant to Plaintiff's claims. The Department of Commerce—acting through BIS—was designated by the President to administer the Section 232 exclusion process and to promulgate the procedures governing exclusion requests. Proclamation 9705, 83 Fed. Reg. at 11627. BIS therefore established the rules under which CBP reviewed exclusion requests, including CBP's responsibility to evaluate the accuracy of the HTSUS classification and the "administrability" of exclusions at the border.

The central factual question identified by this Court—whether CBP had a meaningful role in reviewing the tariff classification during the exclusion process—cannot, therefore, be answered solely through CBP testimony.  The central issues are, first, the expectations BIS had of CBP, and second, whether CBP met those expectations in this case.  Only BIS can provide authoritative testimony regarding the purpose of CBP's administrability review, BIS's expectations regarding verification of HTSUS classifications, and whether CBP's actions in the exclusion request at issue were consistent with BIS policy.  Thus, Defendant's attempt to confine this entire case to the correctness of CBP's tariff classification in denying the protest is unavailing.

Administrative law recognizes that testimony or additional evidence may be necessary where the existing record is insufficient to explain the basis for agency action.  Courts permit supplementation of the record, including testimony from agency officials, where necessary to determine whether the agency considered relevant factors or adequately explained its decision.  *Citizens to Preserve Overton Park*, 401 U.S. at 420.  Indeed, judicial review cannot function effectively if the reviewing court lacks access to the materials and explanations relied upon by the agency responsible for the decision.

Defendant's proposed protective order would prevent Plaintiff from obtaining evidence from the very agency that established the exclusion process and determined how CBP's administrability review and validation was to operate.  Such a limitation is inconsistent with the rules regarding discovery.

In short, BIS is not an incidental witness in this case.  BIS is the agency that designed the exclusion process and defined CBP's responsibilities within that process.  Discovery directed to BIS is therefore necessary to allow the Court to evaluate the disputed factual issues already identified in its prior opinion.

## IV.  DISCOVERY IS APPROPRIATE WHERE MULTIPLE FEDERAL AGENCIES COORDINATE AN ADMINISTRATIVE PROGRAM

The government's motion for protective order rests on the premise that BIS should be insulated from discovery because CBP is the agency responsible for tariff classification regardless of the circumstances. That argument seems calculated to confuse this Court about the structure of the Section 232 exclusion process, which features important differences with ordinary classification decisions.  CBP's role in determining validity of the tariff classification in exclusions and its belated determination of a different classification despite its not being raised in the protest are relevant issues in which BIS is the agency that has relevant information.

Administrative programs frequently involve coordination among multiple federal agencies, each contributing expertise or performing distinct procedural functions. Courts therefore recognize that discovery may properly extend to more than one agency where interagency coordination is relevant to the claims at issue.

The D.C. Circuit has explained that administrative decision-making often involves extensive consultation among federal agencies and that such coordination may form an integral part of the regulatory process.  *Sierra Club v. Costle*, 657 F.2d 298, 406–08 (D.C. Cir. 1981). Where an administrative program relies on such interagency collaboration, testimony regarding the roles and expectations of the participating agencies may be essential to understanding how the program operated.  That is the case here.

The discovery Plaintiff seeks here is not an inquiry into the "mental processes" of government decision-makers.  Here, we seek information in agency records regarding the BIS policy of requiring decisions regarding the "administrability" before posting of steel exclusion requests.  Such discovery is all the more appropriate here, where there is no review of the agency record. Rather, the Court reviews the issues *de novo*.  In these circumstances, discovery concerning

the agencies' coordination and whether CBP's denial of the Protest was inconsistent with established requirements.

Where, as here, the government's administrative practices are central to a claim, discovery may properly explore how those practices were implemented. That is what Plaintiff seeks here.

Courts have also held that Rule 30(b)(6) depositions are particularly appropriate where an organization must explain institutional procedures or coordinated decision-making. *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (Rule 30(b)(6) requires an organization to produce witnesses capable of explaining its policies and procedures and to prepare those witnesses using information reasonably available to the organization).

These principles apply with full force here. The required coordination between BIS and CBP and the manner of that coordination are clearly relevant to the claims. Plaintiff alleges that BIS expected CBP to review tariff classifications during the exclusion review process and that CBP participated in that process prior to approval of the exclusion at issue. Defendant disputes that characterization. The only way to resolve that dispute is through testimony explaining the roles and expectations of both participating agencies.

V. **DEFENDANT'S MOTION IN ESSENCE SEEKS DISMISSAL OF COUNTS I AND III OF THE COMPLAINT.**

The question Defendants have brought before this Court is whether CBP had some responsibility to determine, or at least comment on, the correct HTSUS classification at the outset of an exclusion proceeding. Defendant appears to claim that CBP had no responsibility whatsoever with regard to the correct tariff classification early in the exclusion process. Plaintiff contends that BIS believed otherwise and actually said as much in public notices.

The discovery Plaintiff seeks is focused on Rule 30(b)(6) deposition testimony that is expected to clarify the points the Court found were insufficiently developed in the Complaint. Defendant, in contrast, seeks to preclude any clarification of facts for this Court to consider at trial.

If, as reflected in the New Exclusions Portal Regulations discussed above, BIS relied on CBP to identify problems with the tariff classification early in the process is central to this case. Also vital is whether CBP provided any indication of problems or failed in this responsibility. Again, BIS testimony about what it expected from CBP and whether CBP met those expectations is central to this issue. Defendant has not addressed this issue.

CBP's role in exclusions is clearly subordinate to that of BIS, as indicated in several presidential Proclamations cited above. BIS regulations adopted in March 2018, September 2018 and June 2019 confirmed that BIS expected CBP's involvement in the issue of tariff classification. By June 2019, more than one year before the exclusion request at issue was submitted, that process was moved to early in the process, before posting for public comment. Discovery from BIS is required to explore the expectations and the implementation of these regulations.

Plaintiff has never claimed that the interagency coordination between BIS and CBP regarding HTSUS classification constituted a ruling under 19 CFR Part 177. The point is that the tariff classification for purposes of implementing the particular exclusion at issue in this case was, or was supposed to have been, settled before the request was posted for public comment. CBP has asserted that its "involvement in BIS's review of exclusion requests is very limited." Defendant's Response to Plaintiff's Motion for Judgment on the Pleadings (ECF 22) at 15. The BIS regulations had a much more forceful expectation than the assertion in ECF 22, as Plaintiff has explained herein. This substantial difference between the two agencies' contentions needs to be fleshed out through the discovery Plaintiff has initiated.

This Court's 2024 Opinion notes that the issue whether CBP's purportedly "very limited" review of Section 232 exclusion requests is "automated" such that human intervention is absent is itself a material fact in dispute. Slip op. at 11. Defendant in its motion fails to address whether BIS agreed that CBP's involvement was "very limited," or, if so, whether that limited involvement comported with BIS's expectations. This disagreement reveals far more than the simple fact that CBP failed to grasp the singular attributes of the imported merchandise that make it useful only in oil and gas exploration. It also ignores the fact that BIS expressly stated that it needed CBP's evaluation of tariff classification at the beginning of the exclusion process to avoid evaluating the merits of an exclusion request only to have CBP later assert that it disagreed with the classification and negated BIS's work. This Court should not countenance this attempt to avoid the search for relevant information.

In essence, therefore, Defendant wrongly asks for this Court to dismiss Plaintiff's claims related to CBP's involvement in the exclusion process. Its motion, while styled as one for a protective order, should instead be treated as a motion to dismiss, with all the protections afforded under CIT Rule 12 afforded to a plaintiff. *See, e.g., Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

**CONCLUSION**

  For the reasons stated herein and in Plaintiff's Motion for Legal Ruling and its Reply, (ECF 47, ECF 51), this Court should deny Defendant's motion for a protective order.

                Respectfully submitted,

                /s/ Lewis Leibowitz
                Lewis Leibowitz, Principal
                The Law Office of Lewis E. Leibowitz
                5335 Wisconsin Avenue, N.W.
                Suite 440
                Washington, D.C. 20015

                Phone: (202) 617-2675
                Email: lewis.leibowitz@lellawoffice.com

                *Attorney for Plaintiff*

Date: March 9, 2026